**SIGNAL OIL AND GAS COMPANY, a Corporation, Petitioner,**

v.

**FEDERAL POWER COMMISSION, Respondent,**
**Oklahoma Natural Gas Company, Intervenor,**
**Lone Star Gas Company, Intervenor.**

**No. 11867.**

United States Court of Appeals
Third Circuit.

Argued Oct. 18, 1956.

Decided Nov. 20, 1956.

Justin R. Wolf, Washington, D. C. (Charles A. Case, Jr., Louise C. Powell, Washington, D. C., A. E. Stebbings, Los Angeles, Cal., on the brief), for petitioner.

William L. Ellis and Harry L. Albrecht, Washington, D. C. (Willard W. Gatchell, Gen. Counsel, Federal Power Commission, Washington, D. C., on the brief), for respondent.

Bradford Ross, Washington, D. C. (John S. Carlson, Carlson, Lupardus, Matthews, Holliman & Huffman, Tulsa, Okl., Marshall Newcomb, Roy E. Pitts, Dallas, Tex., Ross, Marsh & Foster, Washington, D. C., on the brief), for intervenor.

Before MARIS, GOODRICH and McLAUGHLIN, Circuit Judges.

GOODRICH, Circuit Judge.

This case raises a question of construction of section 7(e), 56 Stat. 84 (1942), 15 U.S.C.A. § 717f(e), of the Natural Gas Act. Our power to review is found in section 19(b), 52 Stat. 831 (1938), 15 U.S.C.A. § 717r(b). The facts of the case are simple and undisputed. The sole question involved is one of law having to do with the interpretation of section 7(e).

Signal Oil and Gas Company has a gasoline plant in Carter County, Oklahoma, the purpose of which is to process "casing-head" gas which is natural gas produced in association with oil in an oil well. Signal finished the construction of its plant in 1954 and made a contract with Cities Service Gas Company to sell the processed "residue" gas to it at 12 cents per Mcf (thousand cubic feet). Then it wired the Federal Power Commission for a temporary certificate on the ground that prompt action was required to prevent wasting of the gas. The Commission replied the next day by telegram granting a temporary leave to do business but explicitly stating that the per-

mission was granted subject to any orders which the Commission might thereafter make.[1]

Signal thereupon started to do business and to sell its gas. Meanwhile proceedings under section 7(c) of the Act, looking to the issuance of a certificate of public convenience and necessity were had. The Oklahoma Natural Gas Company, Lone Star Gas Company and nine municipalities were given permission to intervene and were heard in the course of the proceedings. Eventually the Commission acted and issued a certificate of public convenience and necessity but conditioned upon a 10 cent gas rate by the applicant company instead of the 12 cent rate which it proposed and, in fact, was charging under the temporary certificate.

■ This is the condition which Signal says will not do at all. It insists that the Commission has no power to attach rate conditions under section 7. It makes the argument that if the Commission is dissatisfied with what Signal charges, section 5(a) of the Act, 15 U.S. C.A. § 717d(a) provides an eleborate process for investigation and the fixing of a proper rate. If Signal itself wants to change its rate there is a provision for that in the Act, section 4(d), 15 U.S.C. A. § 717c(d). Signal makes much of the proposition that its rate filed at the time it asked for the emergency certificate has "become invested with a compelling and decisive legal significance." It says that this rate "is the effective rate governing petitioner's sale. It is

the only legal rate." This statement is true in so far as it means that no other rate could have been charged while the temporary certificate was in effect. Montana-Dakota Utilities Co. v. Northwestern Public Service Co., 1951, 341 U.S. 246, 71 S.Ct. 692, 95 L.Ed. 912. But it is quite another thing to say that by accepting the filing of the rate schedule when it granted the temporary certificate the Commission precluded itself from exercising any conditioning power it had under section 7(e). Cf. Panhandle Eastern Pipe Line Co. v. F. P. C., 3 Cir., 1956, 232 F.2d 467, note 5; Alabama-Tennessee Natural Gas Co. v. F. P. C., 3 Cir., 1953, 203 F.2d 494.

As originally passed, the Natural Gas Act did not specifically grant the Commission power to condition a certificate. But prior to any amendments in this respect, the Fifth Circuit held that the Commission had power to impose reasonable conditions on a certificate. One of the conditions involved was that the applicant should not charge more than the proposed rate of 10 cents per Mcf. Arkansas-Louisiana Gas Co. v. F. P. C., 5 Cir., 1940, 113 F.2d 281.[2]

In 1942 section 7(e) was added to the Act. It provides in part: "The Commission shall have the power to attach to the issuance of the certificate and to the exercise of the rights granted thereunder such reasonable terms and conditions as the public convenience and necessity may require."

We think this language is pretty clear. Such legislative history as we have

---

1. The telegram stated: "This [authorization] is without prejudice to such disposition of the application [for a permanent certificate under section 7(c)] * * * as the record may require."

Signal filed its contract as a rate schedule shortly afterwards and an acknowledging letter from the Commission stated in part:

"This acceptance for filing shall not be construed as a waiver of the requirements of Section 7 of the Natural Gas Act, as amended; nor shall it be construed as constituting approval of any rate * * * and such acceptance is without prejudice to any findings or orders

which have been or may hereafter be made by the Commission in any proceeding now pending * * *."

The Commission's rules put Signal on further notice that, "Acceptance for filing of any rate schedule * * * is not to be construed as approval by the Comsion, *nor to serve in lieu of any of the requirements under Section 7 of the Natural Gas Act.*" (Emphasis added.) 18 C.F.R. 154.101 (Supp. 1956).

2. The details of the rate condition appear in the Commission's order, Louisiana-Nevada Transit Co., 2 F.P.C. 546, 30 P. U.R.,N.S., 40 (1939).

774

tends to show that Congress was advised of the addition to the Commission's express authority and approved thereof.[3] Several cases have recognized this power,[4] and it has never been successfully challenged.

 The Commission has assumed it had the power to impose rate conditions on certificates under the provisions of section 7(e). We are advised that its annual report to Congress for 1955 shows 38 certificate orders subject to rate filing conditions during that fiscal year; 1954, 52 certificates with rate conditions;

1953, 52 such conditions and so on for several prior years. The Commission, of course, cannot enlarge its own statutory authority. But as this Court pointed out in Panhandle Eastern Pipe Line Co. v. F. P. C., 3 Cir., 1956, 232 F.2d 467, 471, "This interpretation of its authority by the Commission through the years must be given considerable weight," especially since left undisturbed by Congress when the Act was amended in 1954.[5]

Signal rejects the binding effect on it of the cases cited. It correctly points out that those cases concern pipe lines

3. In hearings on the amendment which added section 7(e) to the Act, Commissioner Manly cited the Louisiana-Nevada Transit case, supra note 2, as an example of the proposed application of the amendment. He said:

"Now, that certificate was authorized to be issued with those several conditions attached and specified, for instance, the rates that would be charged these cement mills."

Mr. Boren, a Committee member, commented:

"*I have no objection at all to the Commission having power to exact conditions such as you outline.* My objection is not to the power exercised under those conditions, but to the language of the bill which does not limit you in the sort of conditions you should exact. * * * *As to this condition you mentioned, I think you should have that power;* but then there should be some restrictions on what conditions could be exacted * * *." (Emphasis added.)

Mr. Boren went on to say:

"We can limit those conditions to conditions affecting rates, services, and things of that nature." *Hearings before the House Committee on Interstate and Foreign Commerce on H.R. 5249,* 77th Cong., 1st Sess., 23–24 (1941).

The House report stated:

"The bill when enacted will have the effect of giving the Commission an opportunity to scrutinize * * * the characteristics of the rate structure in connection with the proposed construction or extension at a time when such vital matters can readily be modified as the public interest may demand." H.R. Rep. No. 1290, 77th Cong., 1st Sess., 2–3 (1941).

The Senate report also indicated the amendment allowed the Commission to scrutinize rates as part of the certification process. Sen.Rep. No. 948, 77th Cong., 2d Sess., 2 (1942).

4. In Panhandle Eastern Pipe Line Co. v. F. P. C., 3 Cir., 1956, 232 F.2d 467, it was held that a certificate was properly conditioned on filing interruptible rate schedules (note 4). Also, the filed rate contracts' provided that certain consumers reimburse the pipe line for construction costs through additional charges on gas delivered. Held: the Commission could impose the condition that no further payments be made by the consumers for construction (note 5).

Panhandle Eastern Pipe Line Co. v. F. P. C., 83 U.S.App.D.C. 297, 169 F.2d 881, certiorari denied, 1949, 335 U.S. 854, 69 S.Ct. 81, 94 L.Ed. 402, held a certificate properly conditioned on filing rates satisfactory to the Commission and also S. E. C. approval of proposed financing.

In Public Utilities Commission of Conn. v. F. P. C., 3 Cir., 1953, 205 F.2d 116, 120, this Court noted without discussion the existence of a condition in a certificate that a satisfactory rate must be filed.

In Alabama-Tennessee Natural Gas Co. v. F. P. C., 3 Cir., 1953, 203 F.2d 494, a certificate was conditioned on filing a satisfactory rate. Before such a rate was filed and while a temporary rate was in effect the pipe line attempted to increase its rates by filing under section 4(d). This Court held that section 4 (d) could not be used to change a rate before the condition in the certificate was met. Although there was no challenge to the Commission's power to impose a rate condition, the Court's conclusion that the Commission had such power was a necessary part of its holding.

5. 68 Stat. 36 (1954), adding § 1(c), 15 U.S.C.A. § 717(c).

and Signal is an "independent producer," another class of "natural-gas company" which has been regulated under the Act only since the decision in Phillips Petroleum Co. v. State of Wisconsin, 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035, rehearing denied, 1954, 348 U.S. 851, 75 S.Ct. 17, 99 L.Ed. 670. Signal also points out differences in some of the Commission's rules and procedures applicable to each class. Agreed that there are such, we fail to see how these differences are relevant to the issue of the Commission's power to condition certificates under section 7(e).

Signal suggests that even if the Commission has power to condition a certificate on the filing of a rate satisfactory to the Commission, it has no power to condition a certificate on a particular rate. Since setting a particular rate is not of itself improper,[6] we see no reason why a distinction should be drawn between the two types of conditions. The Commission informs us its annual report to Congress for 1952 revealed that sometimes, "the applicant may be required to file a definite and specific rate [as a condition to receiving a certificate]; i. e., the proper rate is spelled out in dollars and cents." Congress left this practice undisturbed. See Panhandle Eastern Pipe Line Co. v. F. P. C., 3 Cir., 1956, 232 F.2d 467, 471.

■ The question of the rate to be fixed as a condition to the granting of the certificate was gone into at length in the proceedings before the Commission. The record shows that at the time of the proceedings all other sales in the area were at 10 cents or less; the average rate was 9.9 cents. There was evidence introduced by the intervenors that an increase in price paid by one purchaser would increase the market price in the whole area, and if Signal received 12 cents, the market price would rise to 12 cents to the great expense of the ultimate consumers. Signal offered no evidence

to justify the reasonableness of the proposed 12 cent rate, nor did it claim that the 10 cent rate was confiscatory. Under the circumstances, substantial evidence supports the Commission's finding that public convenience and necessity required the certificate to be conditioned on a 10 cent rate.

■ Our conclusion is that what the Commission did here was clearly within its statutory authority and the order of the Commission is affirmed.

---

6. The Commission is specifically given power to set a particular rate by section 5(a). The setting of a particular rate was not disapproved in Alabama-

Tennessee Natural Gas Co. v. F. P. C., 3 Cir., 1953, 203 F.2d 494, and Arkansas Louisiana Gas Co. v. F. P. C., supra.