257 F.2d 717
 25 P.U.R.3d 288
 PUBLIC SERVICE COMMISSION OF STATE OF NEW YORK, Petitioner,
v.
FEDERAL POWER COMMISSION, Respondent.
LONG ISLAND LIGHTING COMPANY, Public Service Electric & Gas
Company, Petitioners,
v.
FEDERAL POWER COMMISSION.
 Nos. 12401, 12403.
 United States Court of Appeals Third Circuit.
 Argued March 21, 1958.
Decided June 30, 1958, Rehearing Denied Aug. 27, 1958.
 
 Kent H. Brown, Albany, N.Y., for Public Service Commission.
 Edward S. Kirby, Newark, N.J., for Public Service Electric & Gas Co.
 David K. Kadane, Mineola, N.Y. (Edward M. Barrett, Garden City, N.Y., Bertram D. Moll, Mineola, N.Y., Edward J. Morris, Franklin Square, N.Y., on the brief), for Long Island Lighting Co.
 Gene M. Woodfin, Houston, Tex. (Robert O. Koch, Houston, Tex., J. Evans Attwell, Vinson, Elkins, Weems & Searls, Houston, Tex., Roland B. Voight, Lloyd F. Thanhouser, Houston, Tex., on the brief), for Continental Oil Co. and Tidewater Oil Co.
 Bernard A. Foster, Jr., Washington, D.C. (Charles B. Ellard, William R. Dotson, Edward J. Kremer, Jr., Dallas, Tex., Bernard A. Foster, Jr., Sherman S. Poland, Ross, Marsh & Foster, Washington, D.C., Gentry Lee, Cecil C. Cammack, Bartlesville, Okl., on the brief), for Atlantic Refining Co. and Cities Service Production Co.
 Howard E. Wahrenbrock, Washington, D.C. (Willard W. Gatchell, General Counsel, Robert L. Russell, Asst. General Counsel, John Paul Geneau, Attorney, Federal Power Commission, Washington, D.C., on the brief), for Federal Power Commission.
 William C. Braden, Jr., Houston, Tex., Harry S. Littman, Jack Werner, Harold L. Talisman, Washington, D.C., for Tennessee Gas Transmission Co.
 Before KALODNER, STALEY and HASTIE, Circuit Judges.
 STALEY, Circuit Judge.
 
 
 1
 Serious questions involving the authority of the Federal Power Commission are presented in these petitions to review an order of the Commission granting certificates of public convenience and necessity pursuant to Section 7(e) of the Natural Gas Act, 15 U.S.C. 717f(e).
 
 
 2
 Oil leases in the Gulf of Mexico off the shore of Cameron and Vermilion parishes in Louisiana are owned by four independent producers of natural gas, Cities Service Production Company, The Atlantic Refining Company, Tidewater Oil Company, and Continental Oil Company. They are referred to collectively as the CATCO companies. In the early part of September, 1956, CATCO applied to the Federal Power Commission for certificates of public convenience and necessity for authority to sell their natural gas to Tennessee Gas Transmission Company, pursuant to contracts executed in August, 1956. Later in September, 1956, Tennessee Gas itself applied for a certificate of public convenience and necessity for authority to expand its facilities in preparation for the purchase of the gas from CATCO.
 
 
 3
 The contracts between the CATCO producers and Tennessee Gas provided for an initial rate of 22.4 cents per Mcf (including one cent gathering tax reimbursement), with an automatic increase of two cents every four years thereafter. The highest rate Tennessee Gas had previously paid for natural gas in the area was 18 cents per Mcf. The offshore gas fields in question represent the largest reserve ever committed to one sale, and the sale proposed is the first from the newly developed fields which will provide impressive proportions of future gas supply.
 
 
 4
 Hearings were begun on the CATCO applications on February 28, 1957. Petitioner Public Service Commission of the State of New York, which exercises general regulatory supervision over the gas industry in that state, intervened in the proceedings. An order of the respondent Commission permitted intervention also of four distributing company customers of Tennessee Gas, namely, Long Island Lighting Company, Public Service Electric and Gas Company, Brooklyn Union Gas Company, and Lake Shore Pipe Line Company. Tennessee Gas was the only intervenor in favor of the CATCO applications.
 
 
 5
 In the latter part of March, 1957, the presiding examiner's decision ordered the issuance of certificates of public convenience and necessity to the CATCO applicants without conditions as to price, and conditioned only upon the issuance of a certificate to Tennessee Gas for the construction of its necessary facilities.
 
 
 6
 After exceptions were filed by intervenors, the respondent Commission issued its order of April 22, 1957. It directed the issuance of temporary certificates to the CATCO applicants, but remanded the proceedings to the examiner to determine what initial rates would accord with public convenience and necessity. After reviewing the circumstances which rendered this sale one of extreme importance both as to initial rate and as to the enormous volume of gas proposed to be sold, the Commission found:
 
 
 7
 'Those factors make it abundantly evident that, in the public interest, this crucial sale should not be permanently certificated unless the rate level has been shown to be in the public interest.'
 
 
 8
 The CATCO applicants moved to modify that order, alleging that the economic risk involved would foreclose their acceptance of temporary certificates issued by the respondent Commission. Further, the applicants proposed to change their contracts so as to give the Commission continuing supervision of the proposed sale and future price increases regardless of any change Congress might make in the Natural Gas Act. The initial rate in the contract would stay at 22.4 cents per Mcf, however. No further evidence as to the reasonableness of the initial rate was presented.
 
 
 9
 The second order, issued May 20, 1957, demonstrated the Commission's desire to extend itself in an effort to be fair to the applicants while protecting the ultimate consumers from rates which might later be determined excessive. This order, however, still recognized that there was insufficient evidence in the record on which to base a finding that public convenience and necessity required sale of the gas at the initial rate proposed. The plan embodied in the Commission's order was intended to permit the sale of the gas as soon as possible and was to be effectuated in the following manner. Without remanding the proceedings to the examiner, permanent certificates would be issued conditioned upon the initial rate of 18 cents (including the one cent gathering tax reimbursement). The CATCO companies would be entitled to file for a rate increase to 22.4 cents per Mcf to be effective one day after the commencement of gas deliveries to Tennessee Gas.[1]
 
 
 10
 The Commission reasoned that the consumers would thereby not be relegated to the cumbersome and timeconsuming procedure of a Section 5 proceeding where the burden would be on the Commission to show the rates unreasonable and where there are no provisions for refund in the event the Commission is able to meet its burden. The order, though unusual, was deemed necessary by the Commission to protect all parties concerned.
 
 
 11
 Still the CATCO applicants were not satisfied, and their dissatisfaction this time was expressed by Tennessee Gas in an application for rehearing filed June 4, 1957, which in part states:
 
 
 12
 'Tennessee has been definitely advised by the producer-applicants that they will not amend Section 10 of the contract so as to change the initial rate from 21.4 cents per Mcf to 17 cents per Mcf. (The rates exclude the tax.) Tennessee has been further informed by the producer-applicants that the certificates issued by said order will not be accepted by them for that reason, and that, accordingly, the contracts will be terminated. * * *'
 
 
 13
 A rehearing was held on June 12, 1957. No further evidence was added to the record. Counsel for the CATCO companies made it clear that unless CATCO received certificates not conditioned with initial rates they might deem objectionable, they would seek to dispose of their gas elsewhere than in the interstate market.
 
 
 14
 Impressed with this threat, the Commission issued its order of June 24, 1957, in which it granted permanent certificates of public convenience and necessity to the CATCO applicants without any condition affecting the initial price of 22.4 cents per Mcf as originally provided in the contracts with Tennessee Gas. Commissioner Connole dissented. It is this order which petitioners ask us to review.[2]
 
 
 15
 Tennessee Gas, CATCO, and the Commission argue that the petitioners have no standing to ask this court to review the order of June 24, 1957, because they are not 'aggrieved' as required by Section 19(b) of the Act. Essentially, the petitioners represent the ultimate consumers of the gas. In Natural Gas Pipeline Company of America v. Federal Power Commission, 3 Cir., 1958, 253 F.2d 3, certiorari denied Dorchester Corp. v. Natural Gas Pipeline Co. of America, 78 S.Ct. 1372, we held that a gas transmission company which has passed its increases on to its customers is 'aggrieved,' since as a matter of ethics and good business, it is required to protect its customers. Here the petitioners are more nearly representative of the ultimate consumers than was Natural Gas Pipeline Company in that case. Furthermore, when it is considered that New York distributors are supplied by Tennessee Gas, that the contract price approved by the Commission's order is 4.4 cents higher than any other price paid by Tennessee Gas, that this is the first sale from new fields which will supply enormous quantities of gas in the future, and that the Commission's order in effect places the burden on the petitioners to show that the rates are unreasonable, it is clear the argument that petitioners are not 'aggrieved' is without substance.
 
 
 16
 The suggestion that petitioners have not exhausted their administrative remedies is equally lacking in merit. The final order of the Commission granted unconditional certificates of public convenience and necessity. Rehearing has been denied. Judicial review is the next step, and the suggestion of unsatisfactory administrative remedies which are no remedies at all cannot displace this review.[3]
 
 
 17
 The petitioners pose substantially similar questions on the merits of the case, namely, whether the Commission committed error in its order of June 24 in dispensing with the consideration of the element of price because of the threat of the producers to withhold the gas from interstate commerce, after two previous determinations by the Commission that the sale should not be certificated without evidence in the record that the initial rate was just and reasonable. We conceive of the question, however, as a more fundamental one, involving the statutory jurisdiction of the Federal Power Commission. It is whether the Commission has authority to consider an application for a certificate under Section 7(e) where the terms of the application limit the scope of the inquiry which the Commission is required to make for a determination of public convenience and necessity.
 
 
 18
 The Commission is empowered by Section 7(e) of the Natural Gas Act to attach reasonable conditions to its issuance of certificates of public convenience and necessity.[4] One of the conditions the Commission often attaches is the stipulation of the initial rate. The legislative history of Section 7(e) indicates clearly that Congress intended to give the Commission full scope in scrutinizing the rate structure proposed in passing on the issuance of the certificate. Signal Oil and Gas Co. v. Federal Power Commission, 3 Cir., 1956, 238 F.2d 771, 774, note 3, certiorari denied 1957, 353 U.S. 923, 77 S.Ct. 681, 1 L.Ed.2d 720. In the Signal Oil case, this court reaffirmed the statutory authority of the Commission to impose rate conditions where the public convenience and necessity required it. When the Signal Oil case was before the Commission, it said that the justness and reasonableness of the rate was a 'vital element' in demonstrating 'that the service proposed is or will be required by the present or future public convenience and necessity.' Cities Service Gas Co., 12 P.U.R.3d 3, 14 (1955). According great weight to the initial rates proposed has been the policy of the Commission over the years as is indicated in its annual reports to Congress.[5]
 
 
 19
 While the Commission probably should always consider the impact of the proposed initial rate in its determination of public convenience and necessity, we do not reach the question of whether the Commission must fix the initial rate when its inquiry demonstrates that there is a substantial question of the reasonableness of that initial rate. See Oklahoma Natural Gas Co. v. Federal Power Commission, and the dissenting opinion of Judge Bazelon, D.C.Cir., 257 F.2d 634, 642.
 
 
 20
 In the cases before us, the Commission has left no doubt of the importance and necessity of a consideration of the reasonableness of the proposed initial rate. In its first order issued April 22, 1957, the Commission said:
 
 
 21
 'The record contains insufficient evidence or testimony, however, on which to base a finding that the public convenience and necessity requires the sale of these volumes of gas at the particular rate level here proposed. The importance of this issue in certificating this sale cannot easily be overemphasized. This is the largest reserve ever committed to one sale. This is the first sale from the newly developed offshore fields from which large proportions of future gas supplies will be taken. This is the highest price level at which the sale of gas to Tennessee Gas has been proposed.
 
 
 22
 'Those factors make it abundantly evident that, in the public interest, this crucial sale should not be permanently certificated unless the rate level has been shown to be in the public interest.'
 
 
 23
 Again, in its order of May 20, 1957, the Commission said:
 
 
 24
 '* * * As we have already stated, the record does not contain sufficient evidence on which to base a finding that the public convenience and necessity requires the sale of the gas at that particular rate level. * * *'
 
 
 25
 It was only after the threat of withholding the gas from the interstate market that the Commission retreated from its previous position and granted the certificates without rate conditions by its order of June 24, 1957.[6] Commissioner Connole, in his dissent from this order, puts the problem into sharp focus:
 
 
 26
 'The record is plain that the controlling reason the parties refuse to submit their contracts to regulatory review in the manner found to be necessary in the public interest is their preference for a proceeding in which the burden would be on the Commission to establish that the rate was more than reasonable. They flatly refuse to submit to one in which the parties would be required to show only that the rate was required by the public convenience and necessity. No citation of authority or reference to regulatory theory is needed to demonstrate that the burden of showing the public convenience and necessity requires a proposed service at a particular price level is on the party seeking to take advantage of the proposed service and not on the tribunal before which the case is to be made. Under the unique conditions found here, the critical importance of that decision is indisputable.'
 
 
 27
 The Commission defends its action by claiming the right to change its mind just as a court might do on rehearing, citing Cia Mexicana De Gas, S.A. v. Federal Power Commission, 5 Cir., 1948, 167 F.2d 804. The petitioners, however, do not argue to the contrary. Their position is that, since in its first two orders the Commission determined that the record lacked sufficient evidence upon which to base a finding that the sale at the proposed rate would be in the public interest, and as the final order was based upon the same record, there is still insufficient evidence to support such a necessary finding.
 
 
 28
 The jurisdiction of the Federal Power Commission is entirely statutory. It acts as an arm of Congress, and only as Congress has directed it. It is empowered to grant certificates of public convenience and necessity by Section 7(e) of the Natural Gas Act.
 
 
 29
 'Except in the cases governed by the provisos contained in subsection (c) of this section, a certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operation, sale, service, construction, extension or acquisition covered by the application, if it is found that the applicant is able and willing properly to do the acts and to perform the service proposed and to conform to the provisions of the Act and the requirements, rules, and regulations of the Commission thereunder, and that the proposed service, sale, operation, construction, extension, or acquisition, to the extent authorized by the certificate, is or will be required by the present or future public convenience and necessity; otherwise such application shall be denied. * * *'
 
 
 30
 The Act entrusts to the Commission, and to the Commission alone, the power and authority to determine the issue of public convenience and necessity. Within the framework of the Natural Gas Act, the Commission alone is entrusted with determining the scope of its inquiry necessary to arrive at the decision of whether to certificate a specific sale. It will be remembered that in its reports to Congress, the Commission has recognized that the element of price is important in determining whether a sale such as this should be approved, and as has been stated above, both the statute and the courts have recognized the authority of the Commission not only to take price into consideration but to condition a certificate for the sale of gas at a particular rate. In the present case, that the initial rate was a necessary consideration in the scope of inquiry into the determination of public convenience and necessity has been twice recognized by the Commission, even to the extent that its order of May 20, 1957, in fact conditioned the permanent certificates upon a contract amendment as to the initial price.
 
 
 31
 The Commission has jurisdiction to issue certificates under Section 7(e) based upon its independent judgment after an untrammelled consideration of all the elements which it deems necessary to arrive at that judgment. Congress has not given the Commission power to inquire into the issue of public convenience and necessity where, as here, the applicant circumscribes the scope of that inquiry by attaching a condition to its application requiring the Commission to forego the consideration of an element which may be necessary in the formulation of its judgment. Otherwise stated, the Commission has not been endowed by Congress with jurisdiction to conduct a limited inquiry.
 
 
 32
 Congress has also made it clear that the applicant must be willing to perform the services proposed and conform to the provisions of the Act. The action of the applicants in curtailing the decisionmaking power of the Commission demonstrates their unwillingness to conform to the provisions of the Act; this in itself would require the denial of the applications. The Commission's function is to regulate the sale of gas by producers willing to sell under regulations arrived at in accordance with the provisions of the Act. Such regulations may not be the result of bargaining with an unwilling seller.
 
 
 33
 The order of the Federal Power Commission of June 24, 1957, will be vacated, and the proceedings will be remanded to the Commission with directions to proceed in conformity with this opinion.
 
 
 
 [1]
 Under Section 4 of the Natural Gas Act, the Commission is empowered to suspend rate increases up to a period of five months, but it waived this power by its promise to the applicants to limit suspension to a 24-hour period. The net result would have been to permit the sale almost immediately at the initial rate proposed in the contracts, allow the CATCO applicants the opportunity of proving by Section 4 proceedings that the rate was just and reasonable, and protect the consumers of Tennessee Gas from overpayment by means of the refund provisions of Section 4 in the event CATCO could not meet its burden
 
 
 [2]
 The petitioners pursuing their remedies in this court are Public Service Commission of the State of New York (No. 12,401), and Long Island Lighting Company and Public Service Electric and Gas Company (No. 12,403). Though these are separate petitions for review, we are disposing of both in one opinion. An order of this court issued October 22, 1957, permitted the CATCO companies and Tennessee Gas to intervene in support of the Commission's order under review
 
 
 [3]
 Proceedings under Section 5 of the Act foreclose any possibility of refund to the petitioners of amounts which later may be determined to be excessive
 
 
 [4]
 '* * * The Commission shall have the power to attach to the issuance of the certificate and to the exercise of the rights granted thereunder such reasonable terms and conditions as the public convenience and necessity may require.'
 
 
 [5]
 See dissent of Judge Bazelon in Oklahoma Natural Gas Co. v. Federal Power Commission, D.C.Cir., 257 F.2d 642
 
 
 [6]
 It is abundantly clear that the Commission changed its mind about the necessity of establishing that the proposed rate was in the public interest only because of the threat of the producers to withhold the gas from the interstate market unless they got certificates upon their own terms. The producers expressed themselves unequivocally through the application of Tennessee Gas for rehearing directed to the order of May 20, 1957, and further in oral agrument at that rehearing