**PUBLIC SERVICE COMMISSION OF the STATE OF NEW YORK, Petitioner,**

v.

**FEDERAL POWER COMMISSION,**
**Respondent,**

**Texas Eastern Transmission Corporation,**
**Intervenor.**

**No. 15412.**

United States Court of Appeals District of Columbia Circuit.

Argued Sept. 21, 1960.

Decided Dec. 8, 1960.

Petition for Rehearing Denied Jan. 13, 1961.

Mr. Kent H. Brown, Albany, N. Y., with whom Mrs. Barbara M. Suchow, New York City, and Mr. George H. Kenny, Albany, N. Y., were on the brief, for petitioner.

Mr. David J. Bardin, Atty., F. P. C., with whom Messrs. Willard W. Gatchell, Gen. Counsel, F. P. C., at the time the brief was filed, Howard E. Wahrenbrock, Sol., F. P. C., and Robert L. Russell, Asst. Gen. Counsel, F. P. C., were on the brief, for respondent. Mr. John C. Mason, Gen. Counsel, F. P. C., also entered an appearance for respondent.

Mr. William D. Deakins, Jr., Houston, Tex., of the bar of the Supreme Court of Texas, pro hac vice, by special leave of the Court, with whom Mr. Martin L. Friedman, Washington, D. C., was on the brief, for intervenor.

Before EDGERTON, WASHINGTON and BASTIAN, Circuit Judges.

WASHINGTON, Circuit Judge.

This is a natural gas case. It arises upon petition to review an order of the Federal Power Commission granting to Texas Eastern Transmission Corporation, a pipeline company, an unconditional certificate of public convenience and necessity to expand its pipeline facilities, under Section 7 of the Natural Gas Act.[1]

On February 1, 1957, Texas Eastern executed gas purchase contracts with four producer-sellers of natural gas in the Rayne Field area of southern Louisiana. These contracts called for initial prices of 23.9 cents per Mcf, including reimbursement of state taxes in the amount of 1.3 cents. Shortly thereafter, Texas Eastern filed an application for a certificate of public convenience and necessity to construct a connecting line to Rayne Field, and the four producer-sellers filed applications for certification of the sales of gas to Texas Eastern. Hearings were held, and the Examiner entered an order recommending unconditional certification of the proposals.

While the matter was pending before the Commission on exceptions to the Examiner's decision, the Court of Appeals for the Third Circuit reversed an order of the Commission in another case granting unconditional certification of sales of

---

1. 52 Stat. 824 (1938), as amended, 15 U.S.C.A. § 717f.

natural gas from the offshore Louisiana fields by independent producers at an initial price of 22.4 cents per Mcf, including tax. Public Service Commission of State of New York v. Federal Power Commission, 3 Cir., 1958, 257 F.2d 717.[2] Thereafter, as a consequence of negotiations between Texas Eastern and the Rayne Field producer-sellers, three of the latter filed notice of the termination of their gas sale contracts and of withdrawal of their certificate applications.[3] Texas Eastern thereupon filed a motion to reopen the hearing and amend its original certificate application to modify the design of certain facilities, and to reflect a major change in the plan for acquiring the Rayne Field gas. Instead of purchasing gas in the usual manner from the four producer-sellers, Texas Eastern proposed to acquire leasehold interests in the reserves formerly committed to the contracts, for a total price of some $134,395,700.00.

The significance of this change in the form of the transaction, at least from the standpoint of the producer-sellers, is manifest. Sales of natural gas by an independent producer are subject to Commission regulation under Sections 4 and 5 of the Natural Gas Act. Phillips Petroleum Co. v. State of Wisconsin, 1954, 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035. But the Commission has been held to lack jurisdiction over gas leases. Federal Power Commission v. Panhandle Eastern Pipe Line Co., 1949, 337 U.S. 498, 69 S.Ct. 1251, 93 L.Ed. 1499. The Commission urges that because the acquisitions, in their revised form, are "non-jurisdictional," it is under no obligation to determine whether the price to be paid by Texas Eastern for the gas is consonant with the public interest as a prerequisite to certification of the pipeline construction project which relies upon these leases. A like position is taken by Texas Eastern, which has intervened.

 It was entirely within the Commission's power to certify the pipeline construction program without passing upon the financial merits of the gas acquisition arrangement.[4] But the language and the tenor of the Commission's Opinion and Order appear to confer general approval upon the terms of the acquisition arrangement. Insofar as the Order purports to pass favorably upon the pricing aspects of the gas lease acquisitions, it is unsupported by substantial evidence in the record, and cannot stand.

 While the Act does not require a determination that proposed rates will be just and reasonable in a Section 7 certification proceeding, the fact that prices of natural gas "have leaped from one plateau to the higher levels of another, as is indicated here, does make price a consideration of prime importance." Atlantic Refining Co. v. Public Service Commission, 1959, 360 U.S. 378, 391, 79 S.Ct. 1246, 1255, 3 L.Ed.2d 1312 ("Catco"). We read that decision as holding that where a natural gas company seeks an unconditional certificate to make new sales of natural gas at proposed prices which are "out of line" with existing prices, or which will tend to have an inflationary impact on the natural gas market, it is under an obligation to demonstrate upon the record the reasons why such increased prices are justified by the "public convenience and necessity." The Commission may not act merely upon proof that the prices in question were arrived at as a result of arm's-length negotiation, but must look behind the negotiated price. Nor can it abdicate its responsibilities simply because the parties tell it that the whole transaction will collapse unless the full price asked is approved.

 Under the proposed "lease purchase" arrangement, petitioner claims that the total cost to Texas Eastern for

---

2. Affirmed sub nom. Atlantic Refining Co. v. Public Service Commission, 1959, 360 U.S. 378, 79 S.Ct. 1246, 3 L.Ed.2d 1312, commonly called the "Catco" case.

3. The fourth producer-seller did not file its notice of withdrawal until sometime later.

4. This procedure was followed in Kansas Pipe Line and Gas Co., et al., Doc. G–106, et al., 2 F.P.C. 29, 45 (1939).

each Mcf of Rayne Field gas will be 22.89 cents, including Louisiana tax of 2.3 cents. The Commission questions some aspects of the petitioner's calculations. The difficulty of comparing an ordinary gas purchase with what is here proposed is manifest. But in any event we think it clear that the price is high enough to be in the disputed area to which the Catco rule applies. While it is true that in subsequent rate proceedings instituted under Section 5 the Commission might properly inquire behind the negotiated acquisition costs, City of Detroit, Mich. v. Federal Power Commission, 1955, 97 U.S.App.D.C. 260, 230 F.2d 810, certiorari denied 1956. 352 U.S. 829, 77 S.Ct. 34, 1 L.Ed.2d 48, the "nigh interminable" delay associated with such proceedings makes it essential that any proposal under Section 7 be subjected to a most careful scrutiny. Atlantic Refining Co. v. Public Service Commission, supra. As the Supreme Court has declared in another context, "[u]nreasonable charges exacted at this stage of the interstate movement become perpetuated in large part in fixed items of costs which must be covered by rates charged subsequent purchasers of the gas including the ultimate consumer. It was to avoid such situations that the Natural. Gas Act was passed." Interstate Natural Gas Co. v. Federal Power Commission, 1947, 331 U.S. 682, 693, 67 S.Ct. 1482, 1488, 91 L.Ed. 1742.

■ It is of no importance here that the transactions by which Texas Eastern proposes to acquire the. gas will themselves be, by virtue of a change in form, beyond the regulatory control of the Commission. The pipeline construction project and the transactions by which Texas Eastern will dispose of the gas thus acquired clearly are within the Commission's jurisdiction. The relevance of Texas Eastern's acquisition costs to these matters is unaffected by the form of the transaction; the Commission's warrant to inquire arises by virtue of its responsibility to regulate the purchaser, regardless of the status of the seller.

■ Two courses are open to the Commission. It may, by clarification of the order presently under review, expressly disclaim any approval of the price to be paid for natural gas by the applicant. See Kansas Pipe Line and Gas Co. et al., supra note 4. Or it may reopen the record in the certificate proceeding to permit Texas Eastern to establish by adequate evidence that the acquisition costs which it proposes to incur will be consistent with the public convenience and necessity.

The Commission's Order of June 23, 1959, is reversed, and the matter remanded to the Commission for further proceedings not inconsistent with the opinion of this court.

So ordered.