AMERICAN LIBERTY OIL COMPANY,
Petitioner,

v.

FEDERAL POWER COMMISSION,
Respondent.

No. 18827.

United States Court of Appeals
Fifth Circuit.

March 30. 1962.

16

William M. Parks, Dallas, Tex., Lambert McAllister, Washington, D. C., Kenneth H. Wasson, Dallas, Tex., Lewis G. Mosburg; Jr., Fuller, Smith, Mosburg & Davis, Oklahoma City, Okl., Francis J. Walsh, Washington, D. C., for petitioner.

John C. Mason, Gen. Counsel, Howard E. Wahrenbrock, Sol., Peter H. Schiff, Atty., Robert L. Russell, Asst. Gen. Counsel, F.P.C., Washington, D. C., for respondent.

Before TUTTLE, Chief Judge, and POPE * and GEWIN, Circuit Judges.

TUTTLE, Chief Judge.

The petitioner here seeks to set aside that part of the Federal Power Commission's order granting a temporary certificate of public convenience and necessity that conditioned its grant upon a 16 cent initial price instead of allowing the 18 cent price proposed in the contract.

On March 24, 1960, petitioner, an independent producer of natural gas as defined in Section 154.91(a) of the Commission's regulations, 18 CFR (Supp. 1960) 154.91(a), filed an application for a certificate of public convenience and necessity to sell gas to Transwestern Pipeline Company from its Artesia plant in Eddy County, New Mexico, which is in the Permian Basin area. The sales were proposed to be made under a contract calling for an initial price of 18 cents per Mcf, including tax reimbursement.

On October 18, 1960, petitioner, pursuant to Section 157.28 of the Commission's regulations, 18 CFR (Supp.1960) 157.28, as amended, 25 FR 2363, requested a temporary certificate. That section of the regulations, which implements the portion of Section 7(c) of the Natural Gas Act [1] authorizing temporary certifi-

---

* From the Ninth Circuit, sitting by designation.

[1] The relevant portion of Section 7(c) is: "Provided, however, That the Commission may issue a temporary certificate in cases of emergency, to assure maintenance of adequate service or to serve particular customers, without notice or hearing, pending the determination of an application for a certificate."

cates in cases of emergency, without notice or hearing, pending determination of the permanent certificate application after hearing, classes flaring as an emergency situation. Petitioner, invoking this section of the regulation as a basis for its requested temporary authorization, stated:

> "Said Artesia Plant has been completed and placed into operation and, pending authorization to commence the sales to Transwestern, the residue gas is being flared. This results not only in the waste of valuable and much needed natural gas, but also causes grave financial losses by American Liberty and the producers of cas[i]nghead gas who supply said plant."

The Commission, on November 25, 1960, granted petitioner temporary authority to sell natural gas for resale to Transwestern subject to the condition that the initial price would not exceed 16 cents per Mcf. On December 2, 1960, American Liberty accepted the temporary authorization under protest.

The gas which petitioner sells to Transwestern is "residue gas." It results from processing casinghead gas produced by others from oil wells. The oil wells were already in operation and the gas thus produced was being flared until petitioner could obtain authorization for its interstate sale. These circumstances caused petitioner to contend that in accepting the temporary certificate conditioned as it was, it was acting under duress.

The order of the Commission in granting the temporary certificate with this condition attached was made "without notice or hearing," as authorized by Section (c) of the Act, and without the making of any findings and without the assignment of any reason for attaching the condition.[2]

Petitioner claims that the attachment of the condition was invalid without such findings and statement of grounds. Petitioner further contends that no factual basis exists that would warrant the action of the Commission, even if the facts had been stated by the Commission as a basis for its action.

The Supreme Court has determined that in proper circumstances the Federal Power Commission can attach initial price conditions to the grant of a *permanent* certificate of public convenience and necessity, Atlantic Refining Co. v. Public Service Commission of State of New York, 360 U.S. 378, 79 S.Ct. 1246, 3 L.Ed.2d 1312. This is the well known CATCO case. This Court has held that such conditions may include the modification downward of the initial price to be charged by the producer. Texaco, Inc. v. Federal Power Commission, 5 Cir.,

---

2. The Commission had, some 400 days earlier, written petitioner requesting that petitioner advise the Commission within twenty days whether it would accept a permanent certificate at a 16 cent rate. No reply had been received to this letter. This letter is here reproduced:

"FEDERAL POWER COMMISSION
  "Washington 25
"Docket No. CI60–379
"American Liberty Oil Company
                    "Airmail
                    "Oct. 18, 1960
  "American Liberty Oil Company
"P. O. Box 8105
"Dallas 5, Texas
"Attention: Mr. Kenneth H. Wasson
          "Vice President and General
          Counsel
"Gentlemen:
  "Your application for a certificate of public convenience and necessity filed in the above-captioned docket proposes an initial rate of 18 cents per Mcf for the sale of residue gas from your Artesia Plant in Eddy County, New Mexico, to Transwestern Pipeline Company.

  "It is requested that you advise the Commission, within 20 days from the date of this letter, whether your company will accept a permanent certificate in Docket No. CI60–379 conditioned at an initial rate of 16 cents per Mcf at 14.65 psia. Your agreement thereto will permit prompt disposition of this matter under the abridged hearing procedure provided that no protests or petitions to intervene in opposition to your application are filed.
        "Very truly yours,
          "J. H. GUTRIDE
              "Secretary"

290 F.2d 149. Here there can be little doubt, therefore, as to the power of the Commission to attach the condition that a lower initial price be charged to a *temporary* certificate in a proper case.

The only question, therefore, is the procedural and substantive standard which the Commission must apply before granting what the statute makes plain is an emergency relief for the benefit of the producer.

The nature of the certificate appealed from throws much light on the standards required in its grant. This is a *temporary* certificate, granted at the request of the petitioner to prevent waste, "pending the determination of an application for a [permanent] certificate." Although the granting of a *permanent* certificate requires notice and hearing (Section 7(c), the Supreme Court, in the CATCO case, made it clear that even there the hearing was not for the purpose of ascertaining "just and reasonable rates," 360 U.S. 378, 390, 79 S.Ct. 1246, 3 L.Ed.2d 1312. Thus, something less than a full scale hearing that would justify a particular rate satisfies the requirements of Section 7(c) touching on a permanent certificate.

■ Then how shall we treat the grant of a temporary certificate? Petitioner complains that here was a "naked order issued without hearing and without substantive findings." While the Act is silent as to the way in which the temporary certificate must be clothed, and we can thus ignore the adjective "naked," it expressly says the order can be issued "without notice or hearing." It is plain, therefore, that this is not the kind of administrative action which under the Administrative Procedure Act, 5 U.S.C.A. § 1007, as impliedly argued by petitioner, requires specific findings of fact. In this respect it differs from the cases cited by the petitioner in which the courts hold that when a hearing is required certain procedural requirements must be met.

■ This granting of a temporary certificate to meet an emergency, and at the request of the producer to alleviate what would otherwise injure him, is a summary procedure. As such it may be validly exercised much as a discretionary act.[3]

■ This is not to say that the Commission can act arbitrarily, whimsically or in a manner that amounts to a clear abuse of its discretion. The Act itself says the Commission has the power to attach "reasonable terms and conditions." Section 7(c). The Commission concedes here that "a price condition in a temporary must be reasonable." The Commission then points out, we think correctly:

"* * * The reasonableness of the Commission's determination must be viewed in light of the summary and ex parte nature of a grant of such temporary authorization, as well as the statutory provision for a subsequent full evidentiary hearing on the permanent certificate application. Since a temporary is issued without any hearing, the Commission's decision to grant, deny or condition the certificate upon a price lower than that proposed must necessarily be based on the information furnished by the applicant and the Commission's general knowledge of producer prices based on its regulatory experience. In these circumstances, the Commission's action here can be set aside only if the Court were to determine that the order issuing a conditioned certificate was a clear abuse of discretion, i. e., arbitrary, whimsical, or capricious action, or that the order was otherwise as a matter of law erroneous on its face * * *."

We now come to a consideration of the background against which this temporary emergency certificate was issued. On September 28, 1960, shortly before this petitioner applied for a temporary certifi-

---

3. The Supreme Court spoke in terms of the Commission's "discretion," even in attaching conditions to a permanent cer-

tificate. See 360 U.S. 387, 391, 79 S.Ct. 1246, 3 L.Ed.2d 1312.

cate, the Commission had issued its Statement of General Policy No. 61–1 ("Area Price Levels for Natural Gas Sales by Independent Producers") 24 F.P.C. 818, 25 F.R. 9578, as amended, 25 F.R. 13969, and 26 F.R. 3066. This statement listed a rate of 16 cents per Mcf for initial service from the Permian Basin area, where petitioner's Artesia plant is located. The statement declared the price levels were "for the purpose of guidance and initial action ·by the Commission" and noted that for the present "and in the absence of compelling evidence calling for other action by us, proposed initial sales of natural gas by independent producers which include rates higher than those indicated in the appendix attached to the statement shall be denied a certificate or certified only upon the condition that lower rates be filed. \* \* \* "

█ It being clear that the production here involved was from the Permian Basin area, and it being plain that the Commission has, since the publication of the Statement No. 61–1 undertaken to apply it consistently to·initial filings in the area, we conclude that for the limited purpose of enabling the Commission to determine whether to require a 16 cent initial price condition before granting a temporary certificate of public necessity and convenience, there was an adequate basis for the Commission's action.

The complaint of the petitioner that several producers in the Permian Basin had been granted certificates at an 18 cent rate prior to the issuance of Statement 61–1 is not, we think, sufficient to warrant this Court in saying that the Commission did not properly exercise its discretion in attaching the challenged condition. Other complaints to the effect that a higher figure will be required to provide a fair return on the investment address themselves to an entirely different type of hearing, such as is provided for a Section 4 or Section 5 proceeding. Obviously the Commission could not undertake a rate hearing before the grant of a temporary certificate. The Supreme Court has said it need not do so even before conditioning a permanent certifi-

cate. Atlantic Refining Co. v. Public Service Commission of State of New York et al., supra.

In Texaco, Inc. v. Federal Power Commission, 290 F.2d 149, we said at page 155:

"We think that, in light of CATCO and our earlier decisions, as well as those of four other circuits, see Public Service Commission of [State of] New York v. F. P. .C., D.C. Cir., 1960 [109 U.S.App.D:C. 292], 287 F.2d 146; Public Service Commission of [State of] New York v. F. P. C., D.C. Cir., 1960, [109 U.S.App.D.C. 289] 287 F.2d 143; United Gas Improvement Co. v. F. P. C., 9 Cir., 1960, 283 F.2d 817; United Gas Improvement Co. v. F. P. C., 10 Cir., 1960, 287 F.2d 159, it can hardly be argued that the Commission would not have had the power, if it made a soundly based finding that the public convenience and necessity did not warrant its granting of a certificate at an initial price higher than 17.7 cents, to deny the certificate out of hand. This it could do, not because it had determined in a Section 4(e) proceeding that 17.7 cents was a just and reasonable rate, but because it has the duty of certificating only such sales as are compatible with the public convenience and necessity.

"If it has the legal authority to deny a certificate if the legal price is higher than one which the Commission feels is warranted by the public convenience and necessity it follows that it can grant the certificate on condition that such lower price be substituted by the producer in its rate schedule. In a similar situation, the Court of Appeals for the Third Circuit approved such a procedure in Signal Oil & Gas Company v. F. P. C., [3 Cir.], 238 F.2d 771, certiorari denied 353 U.S. 923, 77 S.Ct. 681, 1 L.Ed.2d 720."

Where, in that opinion dealing with *conditioning a permanent certificate*, we said, "if [the Commission] made a sound-

ly based finding that the public convenience and necessity did not warrant its granting, [etc.]" it must be remembered that we did not describe, even in a permanent certification, what constituted a soundly based finding of want of public convenience and necessity. It certainly does not require the conclusion of "findings" as a part of the decisional process and it does not require that such "soundly based finding" of want of public convenience and necessity be posited on the particular record developed in a proceeding which, under the Act, is taken "without notice or hearing."

We affirm the Order of the Commission.