UNITED GAS IMPROVEMENT COMPA-
NY, Philadelphia Electric Company,
Petitioners in No. 12,797,

v.

FEDERAL POWER COMMISSION,
Respondent,

PUBLIC SERVICE COMMISSION OF
THE STATE OF NEW YORK,
Petitioner in No. 12,805,

v.

FEDERAL POWER COMMISSION,
Respondent.

Pan American Petroleum Corporation,
Atlantic Refining Company, Cities Serv-
ice Production Company, Humble Oil &
Refining Company, Ohio Oil Company,
Oil Participations Incorporated, Tide-
water Oil Company, Transcontinental
Gas Pipe Line Corporation, Continental
Oil Company, Magnolia Petroleum Com-
pany, Pure Oil Company, Sun Oil Com-
pany, Union Oil Company of California,
W. H. Hunt, Trustee for Hassie Hunt
Trust, Phillips Petroleum Company, In-
tervenors.

Nos. 12797, 12805.

United States Court of Appeals
Third Circuit.

Argued June 5, 1959.

Decided Aug. 4, 1959.

Rehearing Denied Sept. 9, 1959.

Hastie, Circuit Judge, dissented.

J. David Mann, Jr., Washington, D. C.,
and Samuel Graff Miller, Philadelphia,
Pa. (Morgan, Lewis & Bockius, W. James
MacIntosh, Philadelphia, Pa., John E.
Holtzinger, Jr., Washington, D. C., Vin-
cent P. McDevitt, Robert P. Garbarino,
Philadelphia, Pa., on the brief), for pe-
titioners in 12,797.

Kent H. Brown, Albany, N. Y. (George H. Kenny, Albany, N. Y., Barbara M. Suchow, New York City, on the brief), for petitioner in 12,805.

Howard E. Wahrenbrock, Washington, D. C. (Willard W. Gatchell, General Counsel, William L. Brunner, Washington, D. C., on the brief), for respondent.

John T. Miller, Washington, D. C. (Richard J. Connor, Thomas F. Brosnan, Gallagher, Connor & Boland, Washington, D. C., on the brief), for Transcontinental Gas Pipe Line Corp., intervenor.

William J. Merrill, Houston, Tex., for producer-intervenors.

Chas. B. Ellard, William R. Dotson, Edward J. Kremer, Jr., Dallas, Tex., Bernard A. Foster, Jr., Sherman S. Poland, Ross, Marsh & Foster, Washington, D. C., on the brief for intervenor Atlantic Refining Co.

Gentry Lee, Cecil C. Cammack, Bartlesville, Okl., Bernard A. Foster, Jr., Sherman S. Poland, Ross, Marsh & Foster, Washington, D. C., on the brief, for intervenor Cities Service Production Co.

Lloyd F. Thanhouser, Bruce R. Merrill, Houston, Tex., on the brief, for intervenor Continental Oil Co.

Carl Illig, Houston, Tex., William H. Holloway, Washington, D. C., on the brief, for intervenor Humble Oil and Refining Co.

George S. Finley, Edward L. Atkinson, Jr., Dallas, Tex., Robert E. May, Washington, D. C., Ralph B. Shank, Dallas, Tex., on the brief, for intervenor W. H. Hunt, Trustee for Hassie Hunt Trust.

Frank C. Bolton, Jr., Ross Madole, William S. Richardson, Dallas, Tex., on the brief, for intervenor Magnolia Petroleum Co.

Martin A. Row, Dallas, Tex., Herf M. Weinert, Joiner Cartwright, Beaumont, Tex., Robert E. May, Richard F. Generelly, May, Shannon & Morley, Washington, D. C., on the brief, for intervenor Sun Oil Co.

Clayton L. Orn, Robert M. Vaughan, Findlay, Ohio, James D. Parriott, Washington, D. C., on the brief, for intervenor Ohio Oil Co.

L. A. Thompson, W. W. Heard, J. P. Hammond, Tulsa, Okl., William J. Grove, Carroll L. Gilliam, Dow, Lohnes & Albertson, Washington, D. C., on the brief, for intervenor Pan American Petroleum Corp.

Rayburn L. Foster, Harry D. Turner, H. K. Hudson, Kenneth Heady, James G. Williams, Jr., Bartlesville, Okl., Charles E. McGee, Washington, D. C., Lambert McAllister, Washington, D. C., on the brief, for intervenor Phillips Petroleum Co.

John C. Snodgrass, Chicago, Ill., on the brief, for intervenor Pure Oil Co.

Paul S. Schlicher, New York City, Alfred C. DeCrane, Jr., Houston, Tex., Frank H. Strickler, Washington, D. C., on the brief, for intervenor Texaco Seaboard, Inc.

L. A. Gibbons, Los Angeles, Cal., George D. Horning, Jr., Patrick G. Sullivan, John J. Ross, Hogan & Hartson, Washington, D. C., on the brief, for intervenor Union Oil Co. of California.

Before GOODRICH, KALODNER and HASTIE, Circuit Judges.

GOODRICH, Circuit Judge.

These cases are two petitions seeking review of action of the Federal Power Commission. They present the same questions and attack the same order.[1] They have been argued together and will be disposed of in one opinion.

The Federal Power Commission has granted permanent certificates of convenience and necessity to twenty-six gas producers, involving thirty-eight applications, who have made contracts for the sale of gas produced in southern Louisiana and offshore areas to Transcontinental Gas Pipe Line Corporation (Transco) for transportation and resale in interstate commerce. The Commis-

1. The opinion and order are contained in Federal Power Commission Opinion No. 315, issued September 4, 1958.

sion also granted permanent certificates of public convenience and necessity to Transco to construct additional pipe line facilities to carry the supply of natural gas authorized by the producers' certificates.

The matters before the Commission involving this large transaction covered many items. There were contracts for the sale of gas by the producers. There were incidental and for our purposes here unimportant provisions concerning arrangements with buyers from Transco's pipe line. There was an elaborately worked out and thoroughly considered plan for the storage of gas in underground reservoirs in western Pennsylvania. There was a proposal by Transco for a huge increase in pipe line facilities to serve the New York and Philadelphia areas. Transco's capital expenditure is about $167,000,000.

While the factual background is wide the subject litigated in this review becomes a narrow one. Transco's customers called for more gas than Transco was able from its then sources to supply. Transco negotiated arms-length contracts with these twenty-six producers. There is no suggestion that there was any collusion in the formation of these contracts. They call for prices ranging from 22.4 cents to 23.3 cents per Mcf of gas.

It is the contention of the petitioners that the Commission abused its discretion in not attaching to the producers' certificates conditions limiting the price to be paid by Transco to a level below that set in the contracts.[2] It is pointed out by them that the price of natural gas obtained from the area here concerned has been increasing rapidly. These last certificates of convenience and necessity which approve this scale of prices will cause another general rise in gas prices, it is argued, and thus produce another loop in the rising spiral.

This is really the only point in the case, when all the argument is made: Was it an abuse of discretion for the Commission to grant these certificates without conditioning them as to price? We have said in the Signal case[3] that the Commission could make its certificate conditioned upon a price limitation.[4] We did not say that it must.

Since the case was submitted to this Court the Supreme Court has affirmed us in a case referred to by the parties as "Catco".[5] We proceed in this case, therefore, with the text of the Supreme Court opinion before us. The Court affirmed the Third Circuit in sending that case back to the Commission for further hearing. The grounds upon which the majority[6] rested its decision differed from those relied on by this Court and

2. Petitioners in No. 12,797, United Gas Improvement Company and Philadelphia Electric Company, attack only the granting of the unconditional certificates to the producer applicants. Petitioner in No. 12,805, Public Service Commission of the State of New York, urges additionally that Transco's certification for the construction of additional pipe line facilities is unlawful since it is dependent on the issuance of certificates to the producers.

3. Signal Oil & Gas Co. v. Federal Power Commission, 3 Cir., 1956, 238 F.2d 771, certiorari denied 1957, 353 U.S. 923, 77 S.Ct. 681, 1 L.Ed.2d 720.

4 " * * * The Commission shall have the power to attach to the issuance of the certificate and to the exercise of the rights granted thereunder such reasonable terms and conditions as the public convenience and necessity may require."

56 Stat. 84 (1942), 15 U.S.C.A. § 717f (e) (1948).

5. Atlantic Refining Co. v. Public Service Commission, 1959, 360 U.S. 378, 79 S. Ct. 1246, affirming on other grounds, Public Service Commission of State of New York v. Federal Power Commission, 3 Cir., 1958, 257 F.2d 717.

6. Mr. Justice Harlan, joined by Mr. Justice Frankfurter, concurred on the narrow ground that there was no evidence to support the findings that (1) "'the public served through the Tennessee Gas system is greatly in need of increased supplies of natural gas'" and (2) "there was serious danger that petitioners' gas would be permanently lost to the interstate market unless an unconditional certificate were granted on their terms." 360 U.S. at page 394, 79 S.Ct. at page 1256.

we shall, of course, keep our eye on the Supreme Court opinion rather than our own.

The Supreme Court pointed out that there had been no showing that " 'the public served through the Tennessee Gas system is greatly in need of increased supplies of natural gas.' " 360 U.S. at page 393, 79 S.Ct. at page 1256. That there is a large and immediate need for more gas in the territory served by Transco was fully developed in the testimony and made the subject of findings by the Commission.

Transco presented testimony at the producers' hearing that it would be unable to meet the estimated average day and peak day requirements of its customers from existing gas supplies. According to the evidence, without increasing its supply Transco would experience annual deficiencies of 8,162,000,000 cubic feet in 1959, 24,399,000,000 cubic feet in 1960 and 23,081,000,000 in 1961. Converted to average daily volumes, these deficiencies would amount to 22,400,000 cubic feet in 1959, 68,200,000 cubic feet in 1960 and 63,200,000 in 1961.[7] Inclusion of the gas reserves which are the subject of these proceedings would mean that Transco need not experience its first annual deficiency until 1971. Apart from the storage field aspect of its certification, Transco will supply an additional 173,634,000 cubic feet daily to its existing customers.

At the Transco hearing prepared testimony by Transco's customers indicated that in 1959 and in the following years substantial deficiencies in the supply of natural gas would exist. In sum, these gas companies, serving local consumers, attested with facts and figures to the increased consumer demand for gas, their inability to satisfy that demand from existing supplies, and the desirability of purchasing increased quantities of natural gas rather than undertaking the more expensive task of expanding facilities and producing manufactured gas.

The Supreme Court opinion emphasizes strongly that attention must be given the price factor in deciding the question of issuance of the convenience and necessity certificate. The Court pointed out that Section 5 of the Natural Gas Act[8] is not a sufficiently adequate protection for the consumer. If the price is too high the consumer will have been paying too much for his gas while the long drawn out proceeding under Section 5 is pending and there is no provision for his getting a refund. 15 U.S.C.A. § 717d (1948). Therefore, the next point necessary to consider is whether the attention given to the subject of price to be paid for the gas was sufficient on the part of the Commission and whether the conclusion it reached was reasonable.

The purchasers' certificates authorize the sale of approximately 2 trillion cubic feet of natural gas to Transco from the southern Louisiana and offshore areas at contract prices ranging from 22.4 to 23.3 cents per Mcf. The contracts do not contain favored-nation or price redetermination clauses.

The trial examiner found that these prices "are materially higher than the levels involved in Transco's prior purchases or existing contracts." Transco's highest previous rates were 17 cents per Mcf. However, these new prices do not establish "a new price plateau in the southern Louisiana shopping area."[9] The Catco price was as high as the minimum rates in the Transco contracts. Catco involved the sale of 1.67 trillion

7. The peak day deficiencies would total 116,800,000 cubic feet in 1959, 159,400,-000 cubic feet in 1960 and 171,200,000 in 1961.

8. 52 Stat. 821 (1938), as amended, 15 U. S.C.A. §§ 717–717w (1948), as amended, 15 U.S.C.A. §§ 717(c), 717r (Supp.1958).

9. Several of the producers testified that negotiations with other pipe line companies had centered around the range of prices ultimately agreed to by Transco. A few stated that they had received firm offers at these prices from other pipe line companies. There can be little doubt that the Transco contract prices actually represent the market price for natural gas in the area.

cubic feet of gas from the offshore area at an initial rate of 22.4 cents per Mcf. The contracts contained escalation clauses calling for periodic increases in specific amounts.[10] In addition to the Catco agreements there were contracts for sales to Southern Natural Gas Company at 22.8 cents per Mcf and to Texas Eastern Transmission Corporation at 23.9 cents.[11] Two nonjurisdictional, i.e., intrastate, contracts called for delivery of about 100 million cubic feet daily at prices which would reach 25 cents per Mcf by the middle of 1960.

The trial examiner also found that " * * * Transco's purchase of gas at the proposed levels will 'trigger' many of its existing contracts. * * * "[12] The amount of the "triggering" was estimated to be $5,483,000 in 1959, $4,177,000 in 1960 and $5,192,000 in 1961. A Transco witness testified that the total effect of the new contracts, including the "trigger" of existing contracts, on Transco's purchased gas cost, systemwide, would be an increase in the rank of 2 cents per Mcf.[13] Finally, there was evidence in this case that the increased supply of natural gas would effect cost savings to Transco's customers who otherwise would be required to manufacture gas themselves at a higher unit cost in order to satisfy expanding consumer demand for gas.

The Supreme Court opinion in Catco stated clearly that "the Act does not require a determination of just and reasonable rates in a § 7 proceeding as it does in one under either § 4 or § 5." 360 U.S. at page 390, 79 S.Ct. at page 1254. It did require "careful scrutiny and responsible reaction to initial price proposals of producers under § 7." 360 U.S. at page 391, 79 S.Ct. at page 1255. It also recognized that § 7 requires the Com-

mission to "evaluate all factors bearing on the public interest." Ibid.

It is the "all factors" aspect which makes these cases so hard to decide. One Commissioner dissented in this case as he has in several proceedings prior. Members of a careful and experienced court divide when the Commission's order comes before them for review. Oklahoma Natural Gas Co. v. Federal Power Commission, 1958, 103 U.S.App.D.C. 256, 257 F.2d 634. See also Florida Economic Advisory Council v. Federal Power Commission, 1957, 102 U.S.App.D.C. 152, 251 F.2d 643.

The balancing of the weight to be given the various factors is not unlike that which a court of equity through the years has given in deciding whether an injunction is to issue in a case before it. It involves an exercise of judgment and the reasons which sway that exercise may be hard to articulate in a particular case.

▇▇ The weighing of the factors and the conclusion to be reached is a task for the Commission. If the necessary elements have not been considered, the error is one of law and subject to court correction. If they have been considered and the conclusion reached is not unreasonable, the conclusion stands whether it is the one we should have reached or not. That, in our judgment, is the case here.

The order of the Commission will be affirmed.

HASTIE, Circuit Judge (dissenting).

The opinion of the court reasons that the result reached by the Federal Power Commission in these cases is a permissible result despite the strictures of the decision rendered by the Supreme Court

---

10. 360 U.S. at page 383, 79 S.Ct. at page 1251.

11. Comparisons are weak, however, since neither the quantities involved in these sales, nor the terms and conditions of these contracts are part of the record.

12. Before the "triggered" increases can be passed along to purchasers, the Commis-

sion must approve the rates under the standards established in Section 4 of the Act. 15 U.S.C.A. § 717c (1948).

13. This estimate was made in the producers' hearing. Evidence in the pipe line hearing indicates that Transco's systemwide average cost of gas purchased would increase by 3 cents.

on June 22, 1959 in Atlantic Refining Co. v. Public Service Commission, 79 S. Ct. 1246. I am not now prepared to challenge that view. However, before reaching that point it seems appropriate to ask whether the Commission would have proceeded in the way it did and reached the result it reached here, had the subsequent teaching of the Atlantic Refining Co. case then been before it.

Certainly the Atlantic Refining Co. case indicates an approach and emphasizes considerations which might well have led the Commission to a different result, with or without further inquiry as to reasonable rates, in the cases now before us. To me that conclusion is a sufficient reason for sending these cases back to the Commission for reexamination. I would vacate the orders of the Commission in the present cases and remand with instructions to reconsider in the light of Atlantic Refining Co. v. Public Service Commission.

Rives, Chief Judge, dissented in part.