**PUBLIC SERVICE COMMISSION OF the STATE OF NEW YORK, Petitioner,**

v.

**FEDERAL POWER COMMISSION, Respondent.**

Texas Gas Exploration Corporation et al., Kilroy Properties, Inc., et al., Bel Oil Corporation, Richardson & Bass (Louisiana Account) Operator, Texas Eastern Transmission Corporation, Hope Natural Gas Company, Texas Gas Transmission Corporation, The California Company, Mississippi River Fuel Corporation, Intervenors.

No. 15461.

United States Court of Appeals District of Columbia Circuit.

Argued Sept. 14, 1960.

Decided Dec. 8, 1960.

Mr. Kent H. Brown, Albany, N. Y., with whom Mrs. Barbara M. Suchow, New York City, was on the brief, for petitioner.

Mr. David J. Bardin, Atty., F. P. C., with whom Messrs. Willard W. Gatchell, Gen. Counsel, F. P. C., at the time brief was filed, Howard E. Wahrenbrock, Sol., F. P. C., and Robert L. Russell, Asst. Gen. Counsel, F. P. C., were on the brief, for respondent.

Mr. Oliver L. Stone, New York City, with whom Mr. John H. Pickering, Washington, D. C., was on the brief for Shell Oil Co., argued on behalf of Shell Oil Co. and certain other intervenors.

Mr. Norman A. Flaningan, Washington, D. C., with whom Mr. Melvin Richter, Washington, D. C., was on the brief, for Hope Nat. Gas Co., argued on behalf of Hope Nat. Gas Co. and certain other intervenors.

Messrs. Christopher T. Boland, and Thomas F. Brosnan, Washington, D. C., and Daniel K. O'Connell, Owensboro, Ky., were on the brief for intervenor Texas Gas Transmission Corp. Mr. Walter E. Gallagher, Washington, D. C., also entered an appearance for intervenor Texas Gas Transmission Corp.

Messrs. Martin L. Friedman and Keith M. Pyburn, Washington, D. C., were on the brief for Texas Eastern Transmission Corp.

Mr. Thomas F. Ryan, Jr., Washington, D. C., was on the brief for intervenor Texas Gas Exploration Corp.

Messrs. Richard P. Loftus, New York City, and Eugene F. Sikorovsky, Scarsdale, N. Y., were on the brief for intervenor J. Ray McDermott & Co., Inc.

Mr. Robert E. May, Washington, D. C., was on the brief for intervenors Callery Properties, Inc., Amerada Petroleum Corp. and Caroline Hunt Sands and Loyd B. Sands. Mr. Richard F. Generelly, Washington, D. C., also entered an appearance for intervenors Callery Properties, Inc., Amerada Petroleum Corp. and Caroline Hunt Sands and Loyd B. Sands.

Messrs. Rayburn L. Foster, Bartlesville, Okl., and Charles E. McGee, Washington, D. C., were on the brief for intervenor Phillips Petroleum Co.

Mr. John H. Pickering, Washington, D. C., was on the brief for intervenors Ocean Drilling & Exploration Co., Humble Oil & Refining Co., Beck Oil Co. and others, Tidewater Oil Co. and Continental Oil Co.

Mr. William Amory Underhill, Washington, D. C., was on the brief for intervenor Kerr-McGee Oil Industries, Inc.

Mr. William P. McClure, Washington, D. C., was on the brief for intervenor Socony Mobil Oil Co., Inc.

Messrs. George D. Horning, Jr., and John J. Curtin, Jr., Washington, D. C., were on the brief for intervenor Union Oil Co. of California.

Messrs. William J. Grove and Carroll L. Gilliam, Washington, D. C., were on the brief for intervenor Pan American Petroleum Corp.

Messrs. Justin R. Wolf and Charles A. Case, Jr., Washington, D. C., were on the brief for intervenor The California Co. Mrs. Louise C. Powell, Washington, D. C., also entered an appearance for intervenor The California Co.

Mr. Thomas Fletcher, Houston, Tex., was on the brief for intervenors Kilroy Properties, Inc., et al., Bel Oil Corp., and Richardson & Bass Operator. Mr. John H. Pickering, Washington, D. C., also entered an appearance for intervenors Kilroy Properties, Inc., et al., Bel Oil Corp. and Richardson & Bass Operator.

Mr. W. Russell Gorman, Washington, D. C., was on the brief for intervenor Mississippi River Fuel Corp.

Before FAHY, WASHINGTON and DANAHER, Circuit Judges.

## WASHINGTON, Circuit Judge.

This case arises upon a petition to review an order of the Federal Power Commission granting unconditional certificates to certain producers of natural gas to make new sales at initial prices in excess of 23 cents per Mcf, upon the authority of Section 7 of the Natural Gas Act, 52 Stat. 824 (1938), as amended, 15 U.S.C.A. § 717f. The primary question before us is whether the action of the Commission in this case is consistent with the principles announced in Atlantic Refining Co. v. Public Service Commission, 1959, 360 U.S. 378, 79 S.Ct. 1246, 3 L.Ed.2d 1312, commonly called the "Catco" case. There, the Commission granted a Section 7 certification, without price condition, of producer sales in the same general area (Southern Louisiana) at an initial rate of 22.4 cents per Mcf.[1] The Supreme Court overturned the certification and remanded the matter to the Commission for further proceedings.

In the Catco decision, the Supreme Court emphasized the crucial character of the initial certificating of a proposal under Section 7(e) of the Natural Gas Act. The inordinate delays, without protection of refund, which are the incidents of a Section 5 proceeding to reduce unreasonable initial prices, provide "a windfall for the natural gas company with a consequent squall for the consumers." Id., 360 U.S. at page 390, 79 S.Ct. at page 1254. The Commission must, therefore, give "a most careful scrutiny and responsible reaction to initial price proposals of producers under § 7." Id., 360 U.S. at page 391, 79 S.Ct. at page 1255. The Act does not require a determination that proposed initial rates are "just and reasonable" in the sense of Sections 4 and 5, but "[w]here the proposed price is not in keeping with the public interest because it is out of line or because its approval might result in a triggering of general price rises or an increase in the applicant's existing rates by reason of 'favored nation' clauses or otherwise," the Commission may exercise its discretion so to condition the certificate "that the consuming public may be protected while the justness and reasonableness of the price fixed by the parties is being determined under other sections of the Act." Id., 360 U.S. at pages 391, 392, 79 S.Ct. at page 1255. If the Commission declines to exercise this discretionary power, and "unconditional certificates are issued where the rate is not clearly shown to be required by the public convenience and necessity * * * full protection of the public interest is not afforded." Id., 360 U.S. at page 392, 79 S.Ct. at page 1255. Applying these principles to the case before it, the Supreme Court held that there was "insufficient evidence [before the Federal Power

---

1. This rate included a state tax of 1 cent per Mcf. See 360 U.S. at page 381, 79 S.Ct. at page 1249. The rate of over 23 cents involved in the present case includes reimbursement of Louisiana severance taxes at the rate of 2.05 cents per Mcf.

Commission] to support a finding of public convenience and necessity prerequisite to the issuance of the permanent [unconditional] certificates." Id., 360 U. S. at page 392, 79 S.Ct. at pages 1255, 1256.

We read the Catco decision as posing for the Commission two alternative courses in cases where a natural gas company seeks certification of sales at prices which are suspiciously higher than other or former prices in the area, or which in some other way will tend to have an inflationary impact upon the natural gas market. As one solution, "the Commission in the exercise of its discretion might attach such conditions as it believes necessary" to protect the public interest while other rate testing procedures are in process. Id., 360 U.S. at page 391, 79 S.Ct. at page 1255. On the other hand, it may grant unconditional certification upon evidence sufficient "to support a finding of public convenience and necessity." Id., 360 U.S. at page 392, 79 S.Ct. at page 1255.

 The Commission urges that the initial rates approved in the proceeding presently before us do not fall within the scope of the Catco rule because they are in keeping with numerous other

certified sales in the area.[2] We are, however, reluctant to endorse so dubious a standard of reference, since presumably the high price certifications which followed in the wake of the Commission's Catco certification are as much subject to explanation as the Catco price itself. Where the inquiry is whether a particular proposed price is inflated, it serves no purpose to refer to other prices which may be equally inflated.[3] We believe that the initial price proposals here at issue fall within the Catco rule, and hence cannot be unconditionally certificated by the Commission without the supporting evidence which that case requires.

The Supreme Court noted, in the Catco case, that the record before it supplied "little more information than was [contained] in the printed contracts." Id., 360 U.S. at page 392, 79 S.Ct. at page 1256. It does not appear to us that the record presently under review is materially better than that found to be deficient in Catco. Although the order now before us was handed down a month after the Supreme Court had spoken in Catco, the evidence was taken before the court's opinion was rendered, and thus before it had become known that additional explanatory proof would be required to

2. We find nothing in the present record to indicate that the area involved in Catco—the off-shore fields adjacent to the coast of Southern Louisiana—can be meaningfully distinguished from the land area fields in Southern Louisiana here involved.

3. We entirely agree with the following statement by the Ninth Circuit in a recently decided case similar to the one at bar:

"When an order certificating an initial rate is under court or Commission review, it is possible that the certificate may be eventually denied or price conditions may be attached. In our opinion an existing rate subject to such a hazard does not provide a reasonably reliable basis upon which to predicate a price line. In the event the existing rate is later modified or conditioned as a result of the pending proceedings the foundation of the line derived therefrom would be undermined. Moreover, the acceptance

of questioned existing prices as a guide in setting the line might itself have the anomalous effect of creating a standard by which the questioned rates would then be judged.

"For the reasons indicated we are of the opinion that it would be an abuse of discretion for the Commission in establishing a price line to rely upon producer prices which are under such a cloud.

"We go further and express the view that where a substantial number of certificated prices are thus under court or Commission review, like prices in the same area though not currently under review ought to be regarded as suspect. In such circumstances it would seem that such similar prices ought not to be relied upon in fixing a line except upon evidence and findings to the effect that they are not subject to the same infirmities which are under test in the pending proceedings." United Gas Improvement Co. v. Federal Power Commission, 9 Cir., 283 F.2d 817, 824.

support inflated prices. The Federal Power Commission, in its opinion in the present case, took the position that the general evidence received was sufficient justification because the certified prices were not "out of line."[4] Doubtless it was encouraged in this by the Third Circuit's affirmance of certifications at comparable prices in the Transco-Seaboard case, decided just before the Commission's opinion in this case was released.[5] Thereafter, however, Transco-Seaboard was reversed by the Supreme Court to permit the Federal Power Commission to determine for itself whether the standards set forth in Catco had been satisfied. Public Service Commission of State of New York v. Federal Power Commission, 1959, 361 U.S. 195, 80 S.Ct. 292, 4 L.Ed.2d 237. In the case before us, the Commission purports to have made a determination of that sort. In our view, however, the decision of the Commission is unsupported by substantial evidence in the record, and cannot stand.

The Catco decision does not prescribe the standard of proof which must be satisfied to support an unconditional certification. Its tenor, however, is unambiguous; the opinion expressly reaffirms that it was "the intention of Congress that natural gas shall be sold in interstate commerce for resale for ultimate public consumption for domestic, commercial, industrial, or any other use at the lowest possible reasonable rate consistent with the maintenance of adequate service in the public interest." Atlantic Refining Co. v. Public Service Commission, supra, 360 U.S. at page 388, 79 S.Ct. at page 1253. We believe that the Supreme Court meant to impress upon the Commission an interpretation of the "public interest" which, in the context of a rising natural gas market, demands a

real administrative effort to hold back prices. We find nothing in the record before us which would justify the conclusion that the Commission has adequately performed this duty. The order, insofar as it grants unconditional certification to the initial price proposals of the producer applicants, is reversed and the case is remanded to the Commission for further proceedings in which the producer applicants may, if they so choose, either augment the record so as to support a certification without price condition, or seek a certification appropriately conditioned.

So ordered.

---

4. The bulk of the evidence was simply to the effect that the contracts were negotiated at arms length, and that the sales would not have been made at any lower price. This is not enough to satisfy the requirements of Catco. See Public Service Commission of State of New York v.

Federal Power Commission, 1960, 109 U.S.App.D.C. ——, 287 F.2d 143, decided this day.

5. United Gas Improvement Co. v. Federal Power Commission, 3 Cir., 1959, 269 F. 2d 865.