**PANHANDLE EASTERN PIPE LINE COMPANY, Petitioner,**

v.

**FEDERAL POWER COMMISSION, Respondent.**

No. 17872.

United States Court of Appeals Eighth Circuit.

April 27, 1966.

Raymond N. Shibley, of Patterson, Belknap & Farmer, Washington, D. C., made argument for the petitioner and filed brief with G. R. Redding, of Baker & Daniels, Indianapolis, Ind.

Israel Convisser, Atty., Federal Power Commission, Washington, D. C., made argument for the respondent and filed brief with Richard A. Solomon, Gen. Counsel, and Howard E. Wahrenbrock, Sol., Federal Power Commission, Washington, D. C.

Before VAN OOSTERHOUT and MEHAFFY, Circuit Judges, and VAN PELT, District Judge.

VAN PELT, District Judge.

Panhandle Eastern Pipe Line Company, pursuant to § 19(b) of the Natural Gas Act,[1] seeks a review and modification of an order of the Federal Power Commis-

sion issued November 12, 1963. The Commission's order relates to volumes of gas delivered for "shrinkage" by Panhandle to the helium extraction plant of National Helium Corporation near Liberal, Kansas. The order, so far as relevant here, requires Panhandle within a stated time to obtain a certificate of public convenience and necessity for the transportation of natural gas "for the purpose of extracting therefrom liquefiable hydrocarbons" at the helium extraction plant. Panhandle contends that this portion of the order is in violation of the Helium Act Amendments of 1960 (50 U.S.C. § 167i) as well as the Natural Gas Act (15 U.S.C. § 717 et seq.).

■ Panhandle is a natural gas company which is engaged in the production, transportation, and sale of natural gas to utility companies for resale and to industrial customers for direct consumption.[2] The present proceeding concerns helium-bearing gas which is obtained in Texas, Oklahoma, and Kansas. This gas is transported through a network of pipelines to an assembling point near Liberal, Kansas, where the gas, after being processed through an extraction plant, is transported to the market areas. This extraction plant removes natural gasoline, butane, and propane but is not capable of extracting helium. The plant only processes approximately 240,000 Mcf per day although the average daily mainline input is approximately 870,000 Mcf.

When Congress deemed helium as being vital to the United States government, it enacted the Helium Act Amendments which authorized the Secretary of the Interior to acquire helium and helium gas mixtures for use by various federal agencies. National Helium, co-owned by Panhandle and the National Distillers and Chemical Corporation, was formed for the purpose of constructing a helium extracting plant and to participate in the government's helium conservation program. On October 13, 1961, National

[1]. 15 U.S.C. § 717r.

[2]. Panhandle is a natural gas company within the meaning of the Natural Gas Act, Section 2(6), 15 U.S.C. § 717a(6), as amended.

Helium executed a contract with the United States who agreed to purchase the helium gas to be extracted.

The helium extraction plant, being built on a tract across the road from the old plant, will not only extract helium but will also act as a complete replacement of the old extraction plant. However, Panhandle is not required to install or to bear the cost of any new facilities as all new equipment will be constructed by National Helium.

Panhandle, pursuant to a contract with National Helium, will deliver 850,000 Mcf of natural gas daily to the helium extraction plant. After delivery, the gas goes through an extraction process which entails the temporary "stripping" or removal of virtually all of the other components of the stream, leaving a residue mixture containing the helium and other inerts. This process involves the refrigeration of the gas, thereby liquefying certain of its components. At the conclusion of this step, National Helium will retain the helium gas mixture and a portion of the liquefied hydrocarbons. The balance is then restored to the mainline gas stream, which, less the shrinkage volume retained by National Helium, is returned to Panhandle for transmission and sale. The operation will remove 17,000 Mcf which together with the 1000 Mcf used as fuel will constitute a shrinkage of 18,000 Mcf per day. These shrinkage volumes will consist of approximately 5840 Mcf of helium, 1000 Mcf of fuel gas, 830 Mcf of purge stream which is principally nitrogen, and 10,330 Mcf of higher hydrocarbons.

The present controversy originated with Panhandle, pursuant to § 7(c) of the Natural Gas Act, applying for a certificate of public convenience and necessity authorizing the transportation of natural gas for sale to National Helium for use as fuel in the helium extraction process. The certificate being sought pertained only to the 1000 Mcf of gas per day, nothing more. There was no objection to petitioner's application and the certificate was granted. However, during the hearing, the Commission's staff contended that the certificate should be conditioned by requiring Panhandle to also apply for a certificate of public convenience and necessity encompassing the remaining 17,000 Mcf which would be removed each day in the extraction process.

In reply, Panhandle asserted that the Federal Power Commission had no jurisdiction over this gas by virtue of § 11 of the Helium Act Amendments of 1960 which provides:

> "The provisions of the Natural Gas Act of June 21, 1938, as amended, shall not be applicable to the sale, extraction, processing, transportation, or storage of helium either prior to or subsequent to the separation of such helium from the natural gas with which it is commingled, whether or not the provisions of such Act apply to such natural gas, and in determining the rates of a natural gas company * * *."

The Commission's staff, however, relying in part on legislative history, contended that even though the Commission had no authority over helium itself, it retained jurisdiction over natural gas containing helium. To support this contention, staff cited, among other things, a statement found in S. Report No. 1814, 86th Cong., 2d Sess., p. 5, U.S.Code Cong. & Admin. News 1960, p. 3599.

> "Section 11 covers the jurisdiction of the Federal Power Commission in this area. The section makes it clear that the Federal Power Commission retains its jurisdiction over natural gas containing helium but has no jurisdiction over helium itself."

The hearing examiner concluded not only that § 11 raised a question as to the Commission's jurisdiction but also that the staff's contention was unreasonable in the following respect.

> "Prior to the extraction process and so long as the shrinkage volumes of natural gas are a part of the main stream it is the main stream of natural gas which Panhandle is delivering and it is unrealistic to speak of Panhandle's transportation of shrinkage volumes of gas."

Upon review before the Commission, the order was modified to the extent of requiring Panhandle to obtain a certificate for the transportation of shrinkage volumes.

"The examiner's position, carried to the extreme, would mean that the Commission has no jurisdiction over the transportation of 'shrinkage' volumes, which contain helium destined to be extracted, from the time the gas is first produced until the helium is extracted; that Commission jurisdiction would not attach until the tailgate of the extraction plant. This is obvious error."

Panhandle sought a rehearing which the Commission denied and then filed a petition to review the Commission's order in the Tenth Circuit Court of Appeals where the court ordered a transfer of the case to this court.[3]

## I.

■■ The first issue of this controversy concerns the effect of § 11 of the Helium Act Amendments upon the Commission's jurisdiction over natural gas containing helium. In interpreting and construing the Natural Gas Act with the Helium Act, the court must, as with any legislation affecting one particular area, attempt to reconcile the acts, if possible, so as to produce a "symmetrical whole." F. P. C. v. Panhandle Eastern Pipe Line Co., 337 U.S. 498, 69 S.Ct. 1251, 93 L.Ed. 1499 (1949). The courts are also required to give these provisions a scope reasonably necessary to permit the Federal Power Commission to perform its tasks as intended by the legislation. Public Service Commission of State of New York v. F. P. C., 117 U.S. App.D.C. 195, 327 F.2d 893 (D.C. Cir. 1964).

Section 11, as originally introduced, provided:

"The provisions of the Natural Gas Act * * * shall not be applicable to the sale, extraction, processing, transportation, or storage of helium prior to or subsequent to *its separation* from the natural gas with which it is commingled. * * *" (Emphasis added).

There was no objection or controversy over the Act's giving the Secretary of the Interior authority over the helium. However, during the committee meetings and Congressional debates, the Commission expressed concern as to whether the act allowed the Commission to retain jurisdiction over natural gas containing helium.

For the purpose of removing this concern, an amendment, adding and substituting words, was passed and § 11 was enacted, reading:

"The provisions of the Natural Gas Act * * * shall not be applicable to the sale, extraction, processing, transportation, or storage of helium either prior to or subsequent to *the separation of such helium* from the natural gas with which it is commingled * * *." (Emphasis added to show the amendment).

The Congressional record clearly shows the legislators' intentions. For example, Congressman Carroll stated:

"I wish the RECORD to be crystal clear, so that any court which reads this RECORD will know what is the specific legislative intent, namely, that we are not exempting helium-bearing gas from jurisdiction by the Federal Power Commission under the Natural Gas Act. There can be no question about that." 106 Cong.Rec. 18603.

■■ The court concludes that § 11 states that the Commission has no jurisdiction over the helium "itself", either while commingled with natural gas or after it has been extracted. Such exemption from the Natural Gas Act's operation, however, does not prevent the Commission from exercising jurisdiction over "helium-bearing natural gas." The statutory language and its legislative history compel this conclusion.

---

**3.** In this court, the Commission moved to dismiss the review, alleging the lack of jurisdiction, but the motion was denied. See 343 F.2d 905, (8th Cir. 1965).

Not only is this the sensible construction of the Commission's jurisdiction, but to hold otherwise would be to render the operation of the Natural Gas Act less effective. When Congress enacted the Natural Gas Act, it was motivated by a desire "to protect consumers against exploitation at the hands of natural gas companies." Sunray Mid-Continent Oil Co. v. F. P. C., 364 U.S. 137, 147, 80 S.Ct. 1392, 1398 (1960), rehearing denied, 364 U.S. 856, 81 S.Ct. 32, 5 L.Ed.2d 80 (1960). See also F. P. C. v. Texaco, Inc., 377 U.S. 33, 84 S.Ct. 1105, 12 L.Ed.2d 112 (1964), rehearing denied, 377 U.S. 974, 84 S.Ct. 1881, 12 L.Ed.2d 745 (1964). As stated in Section 1 of the Act,

> "[T]he business of transporting and selling natural gas for ultimate distribution to the public is affected with a public interest, and that Federal regulation in matters relating to the transportation of natural gas and the sale thereof in interstate and foreign commerce is necessary in the public interest." 15 U.S.C. § 717(a).

To interpret § 11 as exempting "helium-bearing natural gas" from Federal Power Commission jurisdiction would deprive it of a very important phase of its function. Having in mind the obvious purpose of Congress, it would be an exceedingly incongruous result if the statute was construed to obtain the opposite result.

Panhandle further contends that the Commission's order specifically requires a certificate for the "helium" portion of the shrinkage volumes. However, a reading of the order displays that the order pertains only to the "hydrocarbon" portion of the shrinkage volumes.

> "(1) That within 45 days from the date of this order, Panhandle submit an application for a certificate of public convenience and necessity for the operation of the Panhandle interstate pipeline system to transport natural gas for the purpose of extracting therefrom *liquefiable hydrocarbons,* in the National Helium Corporation plant located near Liberal, Kansas." (Emphasis added).

II.

Another contention urged by Panhandle is that the order, for all practical purposes, does constitute an exercise of jurisdiction over helium; that the § 11 exemption is rendered meaningless by requiring a certificate in this situation. To support this contention, Panhandle asserts that a certificate, as in issue here, was not required in the two other cases involving helium-extraction plants.

The two cases are Cities Service Gas Co., reported in 27 F.P.C. 396 (1962), and Northern Natural Gas Co., reported in 28 F.P.C. 1155 (1962) and 29 F.P.C. 450 (1963). The Northern decision was involved in an appeal and is reported as Mid-America Pipeline Co. v. F. P. C., 117 U.S.App.D.C. 352, 330 F.2d 226 (1964).

In *Northern,*[4] the gas company sought a certificate for authority to construct and operate certain facilities for the purpose of transporting 900,000 Mcf per day of gas to a subsidiary, Northern Gas Products Company. The subsidiary would deliver the gas to an extraction plant. The helium, however, would be extracted at an adjacent plant owned by Helex Corporation, another wholly owned subsidiary of Northern. In describing the operation, the Commission stated:

> "[N]orthern proposes jurisdictional construction and operation of facilities and jurisdictional transportation of gas, followed by the nonjurisdictional sale of gas to Products Company, and Products Company's nonjurisdictional extraction, transportation and sale of LPG's." 28 F.P.C. 1155, 1158 (1962)

The Commission granted the certificate.

In discussing *Northern* and *Cities Service,* Panhandle correctly points out that the Federal Power Commission in neither case required a certificate for the transportation of hydrocarbon shrinkage volumes to the helium extrac-

---

4. The facts in Cities Service are, in essence, the same as in *Northern* and thus will not be related.

tion plants. However, both cases involved an application for a certificate pursuant to 15 U.S.C. § 717f, which pertains to the authorization of installing and operating gas transmission facilities. By granting such authority through certification, the Commission, in the court's opinion, was also granting authorization for the transportation of the shrinkage volumes as well. In both proceedings, the Commission in its deliberation considered the effect of the helium extraction process upon the heating value of the natural gas sold to the companies' customers. In fact, the company in *Northern* applied for a certificate authorizing the construction and operation of facilities to deliver natural gas "for use as fuel and *shrinkage*" in a hydrocarbon products extraction plant. (Emphasis added).

### III.

The instant case, however, while involving the construction of a new extraction plant, does not encompass the construction of any new transmission facilities. Panhandle contends that no certification of *any* kind is required where no new transmission facilities are involved and where the company has authority for the transportation of natural gas and for the extraction of certain com-

ponents by virtue of the Federal Power Commission Gas Tariff.[5] In addition, Panhandle asserts that the extraction of hydrocarbons is non-jurisdictional so far as certification is concerned.[6] In fact, the Commission found that National Helium was not engaged in the transportation of natural gas and, thus, a certificate need not be secured.

"[T]he primary purpose and end result of National Helium's plant is to extract helium and hydrocarbons rather than to transport natural gas. The mere movement of the residual gas within the National Helium plant is not to be equated with interstate commerce. The movement of the gas stream through the helium plant is simply incidental to the Helium extraction process and is a necessary step in the method of extraction."

■ The court believes applicable the District of Columbia Circuit's rationale in the *Northern* decision where Mid-America Pipeline Company, an intervenor, attacked the Commission's disclaimer of certificate jurisdiction over the extraction plant. The court concluded that the disclaimer was justified because the public interest was protected by the

---

5. The tariff, among other things, provides: "2.1 Extraction of Hydrocarbons. The gas delivered by Seller to Buyer shall be natural gas; provided, however, that Seller may extract or permit the extraction of moisture, helium, natural gasoline, butane, propane, other hydrocarbons or inerts (except methane) from said natural gas."

6. Whether the Commission may consider the effect of the operations of a non-certified facility in a "rates" proceeding is a different subject. In City of Detroit, Mich. v. F.P.C., 97 U.S.App. D.C. 260, 230 F.2d 810 (1955), cert. denied sub nom., Panhandle Eastern Pipe Line Co. v. City of Detroit, 352 U.S. 829, 77 S.Ct. 34, 1 L.Ed.2d 48 (1956), the court held that the Commission had jurisdiction to consider the operations of a non-certified facility whose operation *enhanced* the properties of the natural gas. In Panhandle Eastern Pipe Line

Co. v. F.P.C., 113 U.S.App.D.C. 94, 305 F.2d 763 (D.C.Cir.1962), cert. denied, 372 U.S. 916, 83 S.Ct. 719, 9 L.Ed.2d 722 (1963), the court held that such operations could be considered when the operations *impaired* the properties of the natural gas (by lowering the BTU content). For later developments in this case, see 121 U.S.App.D.C. 111, 348 F.2d 340 (1965), cert. denied, 382 U.S. 944, 86 S.Ct. 393, 15 L.Ed.2d 353 (1965). See also Mid-America Pipeline Co. v. F.P.C., 117 U.S.App.D.C. 352, 330 F.2d 226 (1964).

"Although the extraction and sale of helium is not subject to Commission jurisdiction, we have authority under Section 11 of the Helium Act, 50 U.S.C. 167 (i), to allocate costs of a helium sale in determining the rates of a natural gas company." Northern Natural Gas Co., 28 F.P.C. 1155, 1161, n. 10.

terms of a rate settlement [7] and the existence of other protective conditions.[8]

"In light of this condition, we conclude that the Commission was not required in this case to certificate the extraction operation * * *."

\* \* \* \* \* \*

"[W]ere such future protection not available, a different problem would be presented and different results might be indicated in this case." Mid-America Pipeline Co. v. F. P. C., 117 U.S.App.D.C. 352, 330 F.2d 226, 229–230 (1964).

These statements indicate an acknowledgment of the existence of the Federal Power Commission's certificate jurisdiction over extraction plants or processes where the public interest could not be protected by other means.

However, even if we assume the extraction of hydrocarbons to be non-jurisdictional, does this prevent the Commission from exercising certificate jurisdiction over the transportation of the "hydrocarbon shrinkage volumes"?

It has been held that the Commission has certificate jurisdiction over the "transportation" of gas in interstate commerce even where the "sale" of the gas may not be jurisdictional, such as direct sales to industrial customers. F. P. C. v. Transcontinental Gas Pipe Line Corp., 365 U.S. 1, 81 S.Ct. 435, 5 L.Ed.2d 377 (1961); F. P. C. v. East Ohio Gas Co., 338 U.S. 464, 70 S.Ct. 266, 94 L.Ed. 268 (1950); Panhandle Eastern Pipe Line Co. v. F. P. C., 232 F.2d 467 (3rd

Cir. 1956), cert. denied, 352 U.S. 891, 77 S.Ct. 129, 1 L.Ed.2d 86 (1956). The courts consider the transportation of gas as a separate subject of regulation irrespective of whether the particular gas is thereafter sold for resale or directly to consumers.

The United States Supreme Court has even upheld the Commission's action of denying a certificate for transportation concerning a non-jurisdictional direct sale for a use not found to be in the public interest. F. P. C. v. Transcontinental Gas Pipe Line Corp., supra. See also, Charleston and Western Ry. Co. v. F. P. C., 98 U.S.App.D.C. 241, 234 F.2d 62 (1956). It appears that the Commission has discretionary jurisdiction over non-jurisdictional matters affecting consumers, at least to the extent of considering to what use the gas will be put, in hearings on the certification of facilities to deliver the fuel. The Commission should not be required to ignore the effects of the use of the gas when the gas is transported in jurisdictional pipelines.

In addition, the Supreme Court in Phillips Petroleum Co. v. State of Wisconsin, 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035 (1954) held that although the Natural Gas Act specifically excluded independent producers and gatherers of natural gas from Federal Power Commission jurisdiction, such companies whose sales of gas either directly or eventually reached interstate pipeline purchasers are subject to exclusive Federal Power Commission rate regulation. Two other deci-

---

7. In *Northern*, all the parties agreed "that Northern's utility customers would be entitled to a rate reduction to compensate them for the increased volumes of gas they must buy to obtain equivalent service." 28 F.P.C. 1155, 1158. It should be noted that on February 26, 1964, an agreement between Panhandle and staff was made as to the adjustment of Panhandle's rates which, among other things, reflect the increased hydrocarbon deliveries to National Helium, 31 F.P.C. 636.

8. "It is significant that the Commission * * * has attached certain conditions to the certificate which we assume were intended for the protection of the public

interest. * * * We thus assume that should the extraction operation cause a depletion in the heating value of the gas stream below either of the levels stated above, the Commission would be obliged to decide whether the public interest required it to institute proceedings under Natural Gas Act, § 14, * * *, in order to determine whether its order had been violated and perhaps to invoke the provisions of Natural Gas Act, § 20, * * *, in order to obtain an injunction in the proper district court against such alleged violation." Mid-America Pipeline Co. v. F.P.C., 117 U.S.App.D.C. 352, 330 F.2d 226, 230, at n. 6 (1964).

sions suggest that the Federal Power Commission may also regulate the physical facilities used in the production and gathering of gas, when those facilities are necessary to making rate-regulated sales. Continental Oil Co. v. F. P. C., 266 F.2d 208 (5th Cir. 1959), cert. denied, 361 U.S. 827, 80 S.Ct. 75, 4 L.Ed.2d 70 (1959); Saturn Oil & Gas Co., Inc. v. F. P. C., 250 F.2d 61 (10th Cir. 1957), cert. denied, 355 U.S. 956, 78 S.Ct. 542, 2 L.Ed.2d 532 (1958). See also, United Gas Improvement Co. v. Continental Oil Co., 381 U.S. 392, 85 S.Ct. 1517, 14 L.Ed. 2d 466 (1965).

These decisions discussed above, in the court's opinion, have given the Commission effective indirect control over concededly non-jurisdictional transactions and facilities. See Public Service Commission of State of New York v. F. P. C., 109 U.S.App.D.C. 289, 287 F.2d 143 (D.C.Cir. 1960). However, the Commission's powers are not unlimited.

> "The Commission cannot order a natural gas company to sell gas to users that it favors; it can only exercise a veto power over proposed transportation and it can only do this when a balance of *all* the circumstances weighs against certification." F. P. C. v. Transcontinental Gas Pipe Line Corp., supra 365 U.S. at 17, 81 S.Ct. at 444.

The court concludes that even though a portion of the mainstream is being transported to a non-jurisdictional facility or for a non-jurisdictional sale, the Commission is not prevented from exercising certificate jurisdiction over the transportation of that portion.

The common thread running through these decisions, in the court's opinion, is the desire to protect the public interest, which is the basis for the enactment of the Natural Gas Act. While it is true that the Act was not intended to regulate the entire natural gas field to the limit of constitutional power, F. P. C. v. Panhandle Eastern Pipe Line Co., 337 U.S. 498, 69 S.Ct. 1251 (1949), it is equally clear that Congress did not desire that an important aspect of this field be left unregulated. See Panhandle Eastern Pipe Line Co. v. Public Service Commission, 332 U.S. 507, 68 S.Ct. 190, 92 L.Ed. 128 (1947).

As previously mentioned, in both the *Northern* and *Cities Service* certification proceedings, one of the considerations was the effect of the helium extraction process upon the heating value of the gas being delivered to the company's existing customers. This aspect was a part of the Commission's deliberation in determining whether a certificate should be issued to authorize the construction and operation of transmission facilities. Panhandle contends that since no new transmission facilities are required in the instant case, there is nothing over which the Commission has certificate jurisdiction, even though Panhandle's existing customers may receive gas of less heating value. Can the determination of the existence of the Commission's certificate jurisdiction be based upon such a distinction? We think not!

In the instant case, such a distinction ignores the fact that the new plant will process substantially more gas than the old plant, 870,000 Mcf as against 240,000 Mcf daily. The distinction is also contrary to language found in Panhandle Eastern Pipe Line Co. v. F. P. C., 232 F.2d 467, 472 (3rd Cir. 1956):

> "When the Congress gave the Commission control over the transportation of natural gas, it necessarily gave it control over the functioning of a pipe line's facilities. Since these are limited, new services must be subject to the Commission's authority if the latter is to be at all effective."

More important is the existence of the Commission's certificate jurisdiction over the transportation of natural gas in interstate commerce, even though the transportation may be to a non-jurisdictional facility or for a non-jurisdictional sale. The court holds that the Federal Power Commission has certificate jurisdiction over the transportation of volumes of gas for "shrinkage"

where such exercise is necessary to protect the public interest.

It is the court's conclusion that Panhandle must apply for a certificate of public convenience and necessity authorizing the transportation of those volumes of hydrocarbons utilized or consumed in the helium extraction process. Thus, the Commission's order will be affirmed in all respects.