OPINION OF THE COURT
Chief Judge Cooke.
This proceeding involves a conflict between Federal and State laws governing the providing of assistance to the medically needy. In the present situation, the State law must defer to the Federal and the amount of State assistance should be determined without reference to the availability of Federal aid.
Section 366 of the Social Services Law prescribes New York’s eligibility requirements for receiving Medicaid benefits. Generally, a beneficiary must be financially needy to qualify for Medicaid assistance. Section 366 (subd 2, par [c]), however, provides an exception for persons, not otherwise eligible for Medicaid, who incur a “catastrophic illness”. Financial aid may be given to such persons, but *104 “such assistance shall be limited to payment for that portion of the cost of in-patient care, services and supplies while in a medical institution which, after application of available insurance benefits and resources not exempt [as a homestead which is essential and appropriate to the needs of the household, essential personal property, certain liquid resources, and certain savings amounts], is in excess of [the lesser of 25% of the beneficiary’s annual income or the amount he or she would receive if otherwise eligible for cash public assistance]” (see Social Services Law, § 366, subd 2, pars [a], [c]).*
For many years, the United States Government has provided financial assistance for the construction and modernization of hospitals and other medical facilities (see US Code, tit 42, § 291 et seq.). Commonly referred to as “Hill-Burton”, the program requires the recipients to make “available in the facility or portion thereof to be constructed or modernized a reasonable volume of services to persons unable to pay therefor” (US Code, tit 42, § 291c, subd [e]). The Secretary of Health and Human Services has promulgated certain rules regulating the delivery of uncompensated services under the Hill-Burton Act (see 42 CFR 124.501 et seq.). Of concern here, the regulations prohibit a facility from calculating as part of its uncompensated services “[a]ny amount that the facility has received, or is entitled to receive, from a third party insurer or under a governmental program, except where the person to whom the facility provides services refused to take reasonable *105 actions necessary to obtain the entitlement.” (42 CFR 124.509 [a].)
Petitioner Feight was hospitalized November 2-9, 1979, at petitioner Nathan Littauer Hospital. On November 3, he applied for free care under the Hill-Burton Act. Feight was told that the Federal program required that he first apply for Medicaid benefits, which he did at the end of that month.
Feight’s circumstances were such that he was eligible for Medicaid assistance only under the provision for persons suffering a catastrophic illness. On December 19, the local Department of Social Services preliminarily denied his application because his monthly income exceeded by $22 per month the statutory maximum for a person in his situation. Feight was informed that if he would pay $264 toward his medical expenses, he would then be eligible for Medicaid and should thereupon contact the department. Feight never contacted the agency and his application was finally denied on January 23, 1980.
In the meantime, on January 8, the hospital found Feight to be eligible for assistance under the Hill-Burton Act. Consequently, Feight would not be personally responsible for the $1,347 in medical expenses incurred by his stay. The hospital agreed to pay the $264 “pay-down” amount from Hill-Burton assistance.
Feight requested a review of the local agency’s decision, and a fair hearing was held on July 8, 1980. Respondent State Commissioner of the Department of Social Services confirmed the denial, but on a ground different than that of the local agency. Respondent reasoned that, by virtue of being found eligible for assistance under the Hill-Burton Act, Feight had incurred no “costs” and so was ineligible for Medicaid.
Petitioners commenced this article 78 proceeding, seeking an order compelling payment of $790, the difference between the value of the services rendered, computed at State compensation rates, and the pay-down amount. Special Term dismissed the petition, and the Appellate Division unanimously reversed. This court now affirms, but on reasoning different than that of the lower court.
*106 Respondent asserts that petitioners have no standing to bring this proceeding, it being urged that because petitioner Feight does not have any obligation to pay the medical expenses or any continuing eligibility for Medicaid, he has no injury requiring redress. This reasoning, however, would leave the matter forever unresolved, as no individual found eligible for Hill-Burton assistance would ever be able to challenge the denial of Medicaid benefits. In these circumstances, respondent’s objection to Feight’s standing must be rejected. Inasmuch as petitioner Feight does have standing and presents the same arguments as the hospital, we do not address the question of whether the hospital has standing.
In addressing the merits of the appeal, it should be noted that the Appellate Division mischaracterized the basis for respondent’s decision by describing the denial as being grounded on Feight’s failure to personally pay the $264 pay-down amount. As related above, respondent’s rationale actually was that Feight incurred no “costs” because he was found eligible for assistance under the Hill-Burton Act.
The State law should be applied first so that Hill-Burton assistance is used only to supplement the Medicaid program. The controversy involves the doctrine of Federal supremacy, which generally requires that conflicting provisions in State and Federal laws be construed so as to give effect to the latter. In the present case, the court is confronted by a situation in which both New York and the Federal Government have created schemes to assist the medically needy. In another case involving overlapping regulatory plans, the Supreme Court stated: “The test, therefore, is whether the matter on which the State asserts the right to act is in any way regulated by the Federal Act. If it is, the federal scheme prevails though it is a more modest, less pervasive regulatory plan than that of the State” (Rice v Santa Fe Elevator Corp., 331 US 218, 236). By analogy, the Hill-Burton exclusion of governmental sources should be given precedence over the State’s exclusion — i.e., Medicaid eligibility should be determined without reference to the availability of Hill-Burton assistance.
*107 Providing free medical assistance under the Hill-Burton Act is an adjunct of the Federal Government’s funding for constructing and modernizing hospitals. A hospital must annually provide a minimum amount of uncompensated services (see 42 CFR 124.503 [a]), but no maximum amount of assistance is prescribed and nothing requires a hospital to exceed the minimum. Indirectly, then, Hill-Burton assistance involves Federal funds and represents a program “funded” by the Nation’s taxpayers. In contrast, New York’s catastrophic illness program is funded solely by State funds. Consequently, the commissioner’s decision has the effect of protecting New York taxpayers while burdening all other taxpayers — who cannot protect their interests in New York — with caring for New York’s catastrophically ill. As a matter of comity, the State aid should be provided first.
For the foregoing reasons, respondent erred when she considered Feight’s eligibility for Hill-Burton assistance in denying his application for Medicaid. These payments do not fall within the categories of section 366 (subd 2, par [c]) of the Social Services Law.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Judges Jasen, Jones, Wachtler, Fuchsberg, Meyer and Simons concur.
Order affirmed, with costs.

 The full text of section 366 (subd 2, par [c]) of the Social Services Law provides: “(c) Any inconsistent provision of law notwithstanding, medical assistance shall also be given in the event of catastrophic illness to any person not otherwise eligible under this section; provided, however, that such assistance shall be limited to payment for that portion of the cost of in-patient care, services and supplies while in a medical institution which, after application of available insurance benefits and resources not exempt under subparagraphs (1), (2), (3) or (4) of paragraph (a) of this subdivision, is in excess of either (i) twenty-five per centum of the recipient’s annual net income or (ii) that amount of recipient’s annual net income in excess of the applicable cash public assistance eligibility level, whichever is less. Income or resources of responsible relatives shall be deemed income or resources of the recipient for purposes of this paragraph.”
Section 366 (subd 2, par [a], els [l]-[4]) provides:
“(1) a homestead which is essential and appropriate to the needs of the household;
“(2) essential personal property;
“(3) liquid resources in the amount of five hundred dollars for each person, but not in excess of two thousand dollars per family, as a burial reserve;
“(4) savings in amounts equal to at least one-half of the appropriate income exemptions allowed”.