**Wayne GADWAY, individually and on behalf of all others similarly situated, Plaintiff,**

v.

**Barbara BLUM, individually and in her official capacity as Commissioner of the New York State Department of Social Services, and Richard H. Duquette, individually and in his official capacity as Commissioner for Social Services, Clinton County, Defendants.**

No. 82–CV–220.

United States District Court, N.D. New York.

June 8, 1983.

Blum; C. Michael Reger, Asst. Atty. Gen., Troy, N.Y., of counsel.

John Dee, Clinton County Dept. of Social Services, Plattsburgh, N.Y., for defendant Duquette.

## MEMORANDUM–DECISION and ORDER

MINER, District Judge.

### I

This class action concerns the relationship between the medical assistance ("Medicaid") program for the medically needy, 42 U.S.C. §§ 1396a(a)(10)(C) and 1396a(a)(17), New York Social Services Law §§ 366.-1(a)(5) and 366.2(b), and the Hill-Burton Act, 42 U.S.C. §§ 291 *et seq.* The issue here is whether the "spend-down" liability of a medically needy family [1] can be met by incurring a hospital bill which the hospital "writes off" as part of its obligation to provide free or reduced price care to low income people under the Hill-Burton Act. The claim here is predicated upon 42 U.S.C. § 1983, *see Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), and jurisdiction is asserted under 28 U.S.C. § 1331. Before this Court are plaintiff's motion for summary judgment [2] and defendants' cross-motion for summary judgment.[3] Fed.R.Civ.P. 56.

### II

The facts here are uncontroverted. The Gadways were determined to be Medicaid eligible, subject to a $1,410.00 "spend-down" liability. Mrs. Gadway then became hospitalized, and the Gadways incurred a bill for $1,528.00 from the hospital, plus other medical bills for her care. Medicaid payment for the hospital and related bills was denied

North Country Legal Services, Plattsburgh, N.Y., Greater Upstate Law Project, Rochester, N.Y., for plaintiff; Omshanti Parnes, Rene H. Reixach, Rochester, N.Y.

Robert Abrams, Atty. Gen. of the State of New York, Albany, N.Y., for defendant

1. The "medically needy" are people with income in excess of the Medicaid allowances but whose medical bills reduce that income below those allowances. 42 C.F.R. § 435.1(b)(3)(i).

2. Plaintiff also seeks attorney's fees as the prevailing party under 42 U.S.C. § 1988.

3. At the present time Cesar A. Perales is serving as Commissioner of the New York State Department of Social Services and is consequently substituted as a party defendant for Barbara Blum, the former Commissioner, pursuant to Fed.R.Civ.P. 25(d)(1).

because, based on the Medicaid rates, which are less than the private billing rates, the $1,410.00 "spend-down" obligation of the Gadways had not been met. Mr. Gadway then applied to the hospital to have the bill "written off" under its Hill-Burton obligation. His request was granted.

Thereafter, the Gadways used a Medicaid card for other care totalling $2,046.36 during the six-month coverage period. At a subsequent Medicaid re-application, the local social services district discovered that Mr. Gadway's hospital bill had been "written off" under the Hill-Burton Act. Accordingly, the district determined that, since Mr. Gadway was no longer liable on the bill and had not paid it himself, he had never met his $1,410.00 spend-down obligation and that excess Medicaid benefits of $1,410.00 (out of the $2,046.36 total paid) had been provided. The local social services district then had Mr. Gadway sign a written acknowledgment of such $1,410.00 overpayment.

Mr. Gadway contends that there was no overpayment, as a matter of law, since the hospital bill that was incurred and then "written off" under the Hill-Burton Act should have been counted toward his Medicaid "spend-down" liability. If Mr. Gadway is correct, then the acknowledgment of liability is invalid.

Plaintiff moves for summary judgment determining that his "spend-down" liability was met and that defendants' policy to the contrary violates the Hill-Burton Act and the Social Security Act. Plaintiff also seeks a declaration that the overpayment agreement is a nullity, New York Social Services Law § 369.1(b) (permitting recovery only of Medicaid not "correctly paid"), and an order requiring that class members be notified and afforded the chance to have their benefits recomputed correctly.[4]

III

This case requires that the Court construe two unrelated federal health care statutes so as to conform them to their Congressional intent. The first, the Hill-Burton Act, 42 U.S.C. §§ 291 et seq., was enacted in 1944 and predates the Medicaid program, 42 U.S.C. §§ 1396 et seq., by two decades. Among the chief beneficiaries sought to be served by the Act were persons unable to pay for such medical services. Cook v. Ochsner Foundation Hospital, 319 F.Supp. 603, 606 (E.D.La.1970). Indeed, the Act authorizes the Surgeon General to require assurances from hospitals that receive assistance under it that a reasonable volume of services be provided to "persons unable to pay therefor." 42 U.S.C. § 291c(e). See American Hospital Association v. Schweiker, 529 F.Supp. 1283, 1290 (N.D.Ill.1982) ("The real beneficiaries of the entire program [are] those unable to pay for health care themselves").

The Medicaid program, 42 U.S.C. §§ 1396 et seq., enacted in 1965, P.L. 89–97, provides federal financial assistance to states that choose to reimburse certain costs of medical treatment for needy persons. Schweiker v. Gray Panthers, 453 U.S. 34, 36, 101 S.Ct. 2633, 2636, 69 L.Ed.2d 460 (1981), citing Harris v. McRae, 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784 (1980). Eligibility for Medicaid under the "medically needy" option is determined upon consideration of income and resources available to the applicant in accordance with standards prescribed by the Secretary of Health and Human Services. Id. The purpose of Medicaid is to assist the states in furnishing medical assistance to certain categories of people "whose income and resources are insufficient to meet the cost of necessary medical services." 42 U.S.C. § 1396. For the group of people involved, the "medically

---

4. This action was certified as a class action by order dated and entered December 7, 1982, on behalf of a class of all

New York residents who have applied, are applying or will apply for Medicaid under the medically needy program in the State of New

York and who have had, have or will have their eligibility for the amount of Medicaid benefits determined without any costs of care written off under the Hill-Burton Act and its regulations counted toward their spend-down liability for their cost of care.

needy," Congress specified that a state's Medicaid plan must include "reasonable standards" that "(A) are consistent with the objectives of this subchapter" and "(B) provide for taking into account only such income and resources as are . . . available to the applicant or recipient." 42 U.S.C. § 1396a(a)(17).

■ While both statutes admittedly are similar in purpose, plaintiff argues that the construction applied by defendants completely undercuts the intent of the Hill-Burton Act to provide care for people unable to pay therefor as beneficiaries of the program, since defendants' construction results in every dollar "written off" under the Hill-Burton Act being counted to reduce the amount of a "spend-down" Medicaid recipient's countable bills by an equal amount.[5] This Court agrees.

The answer to how these two statutes should properly be construed, in addition to the public policy concern that Hill-Burton funds benefit their intended poor beneficiaries rather than Medicaid programs, is found in the various regulations and policies of the two programs. A Medicaid recipient is eligible to have the rest of his or her medical bills covered once bills in the "spend-down" amount have been "incurred." 42 C.F.R. § 435.2–(b)(3)(i); 42 C.F.R. § 435.851(c). Thus, the issue here is whether a medical bill that is eventually "written off" under Hill-Burton is an "incurred" expense within the meaning of the regulations.

Defendants argue that expenses which are initially "encountered," but later forgiven, cannot be considered "incurred" expenses. However, this is contrary to the dictionary definition or ordinary meaning of the word "incur." "Incur" may be defined as "becom[ing] liable or subject to." *Webster's Third New International Dictionary* 1146 (Merriam-Webster).[6] Thus, under the facts of this case, the hospital bill was an "incurred" expense at the time the bills were submitted to Medicaid for coverage, since it was only later on in the process that they were "written off" by the hospital under the Hill-Burton Act after Medicaid payment had been *refused.*

Moreover, as required by 42 C.F.R. § 435.831(c)(1), these bills also were "not subject to payment by a third party," since the Hill-Burton program is not a "third party" payor as it does not actually provide for payment of bills. (Memoranda of Dep't of Health and Human Services, Affidavit of Rene H. Reixach, sworn to January 7, 1983, Ex. A). *Cf. Metropolitan Medical Center v. Harris,* 693 F.2d 775 (8th Cir.1982); *Iredell Memorial Hospital, Inc. v. Schweiker,* 699 F.2d 196 (4th Cir.1983) (hospital costs incurred in providing free care to indigents pursuant to Hill-Burton Act, which conditions availability of federal hospital construction funds on provision of such free care, are not reimbursable under Medicare Act). Accordingly, it is clear that the bills here were "incurred" and, consequently, should have been counted toward the "spend-down" liability. *See North Shore University Hospital v. D'Elia,* N.Y.L.J. Oct. 16, 1978 p. 17 (Sup.Ct. Nassau Co.) (Medicaid agency cannot require, as a condition for medical assistance, that the "spend-down" amount actually be paid before Medicaid pays the excess).

This construction is supported by regulations of the Department of Health and Human Services which make Hill-Burton, as opposed to Medicaid, the payor of last re-

---

**5.** For example, if there is a $2,000 medical bill with $1,000 being the spend-down of the patient and $1,000 being the Medicaid liability and the bill is written off by $1,000 under Hill-Burton, then defendants would treat the written-off bill as a $1,000 bill still subject to the $1,000 spend-down liability of the patient. The Medicaid recipient thus receives no benefit of the Hill-Burton write-off, as intended; rath-

er, the benefit flows to the Medicaid program by reducing *its* liability dollar for dollar.

**6.** *See Williams v. St. Clair,* 610 F.2d 1244, 1248 (5th Cir.1980), *rehearing denied,* 617 F.2d 295 ("incurred" must be interpreted in its ordinary dictionary meaning).

sort. Thus, 42 C.F.R. § 124.509(a) provides that, in computing covered Hill-Burton services, a hospital may not include "[a]ny amount that the facility has received, or is entitled to receive, from a third party insurer or under a governmental program." It is clear that Medicaid is just such a "governmental program." *See Gilmore v. Custer,* Civil No. L. 79–2 (N.D.Ind.1980) (construing § 124.509(a) as requiring that State funds, under Indiana's "Hospital Commitment Act" be exhausted *before* Hill-Burton coverage would be available); *Feight v. Lesser,* 58 N.Y.2d 101, 459 N.Y.S.2d 569, 446 N.E.2d 133 (1983) (interpreting § 124.509(a) as requiring that funds under New York's Medicaid catastrophic illness program be provided first, as a matter of federal supremacy, before Hill-Burton is utilized).

Indeed, the Hill-Burton Act is administered with the recognition that it is to be the payor of last resort, since hospitals are required by § 124.509(a) to have applicants for Hill-Burton coverage apply first for Medicaid. *See* Complaint, Ex. 2 (Internal Memorandum of New York State Dep't of Social Services); *see also* comments of the Dep't of Health and Human Services in its response to amendments to regulation 124.-509, 44 Fed.Reg. 29393–29394 (May 18, 1979) ("a facility may condition provision of uncompensated services on an applicant's applying for benefits under other programs .... Such a requirement is clearly consistent with [the Department's] view of uncompensated services as a 'last resort payment' program"); *accord* Dep't of Health and Hu-

man Services, Bureau of Health Facilities, Division of Facilities Compliance, Program Policy Decision 81–4 (Reixach Affidavit, Ex. F).[7]

Consequently, under the circumstances of this case, in order to assure that the Hill-Burton program will be the "payor of last resort," the State must apply toward the "spend-down" amount any applicable hospital expense "written off" under Hill-Burton. In this way the two statutes are construed so as "to produce a symmetrical whole," *Panhandle Eastern Pipe Line Co. v. Federal Power Commission,* 359 F.2d 675, 679 (8th Cir.1966), and to accomplish their intended purpose.

## IV

Plaintiff, in addition to seeking declaratory relief, seeks an order requiring that local social services districts notify class members that their Medicaid benefits may have been computed improperly and thereby afford them a chance to have their benefits recomputed correctly.[8] However, plaintiff's proffered recommendations as to a proper mechanism for effectuating relief to the class are vague and ambiguous. In addition, defendants have been of no assistance in this matter and have chosen instead to oppose all forms of notification as being "unduly burdensome." Consequently, the parties are directed to confer, within two weeks of the date of this order, for the purpose of stipulating to detailed recommendations to the Court regarding the

---

7. However, the position of the Department of Health and Human Services on the issues in this action has been inconsistent. *Compare* position of the Bureau of Health Facilities of the Health Resources Administration (which administers Hill-Burton) *with* position of the Health Care Financing Administration (which oversees Medicaid) (Reixach Affidavit, Exs. D, E; Affidavit of C. Michael Reger, sworn to February 7, 1983, Ex. A). Where, as here, an administrative agency takes contradictory positions, its views do not have to be accorded deference. *See General Electric Co. v. Gilbert,* 429 U.S. 125, 142–143, 97 S.Ct. 401, 411, 50 L.Ed.2d 343 (1976); *Nico v. Commissioner,* 565 F.2d 1234, 1237–1239 (2d Cir.1977); *Calkins v.*

*Blum,* 511 F.Supp. 1073, 1096 (N.D.N.Y.1981), *aff'd,* 675 F.2d 44 (2d Cir.1982).

8. It is clear that, although the eleventh amendment bars retroactive awards against states, *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1973), courts have, focusing on the lack of immunity on the part of the counties and their officials, fashioned "Quern" type notices to be issued by state officials which would cause unlawfully withheld benefits to be repaid. *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). *Calkins v. Blum,* 511 F.Supp. 1073 (N.D.N.Y.1981), *aff'd,* 675 F.2d 44 (2d Cir.1982).

manner of class notification and the proper method of reimbursement. If the parties are unable to stipulate as requested, they shall submit, within three weeks of the date of this order, counter-proposals addressing the same matters.

## V

Accordingly, plaintiff's motion for summary judgment is granted to the extent provided above. Defendants' cross-motion for summary judgment is denied. Plaintiff may, upon notice to defendants and according to Northern District of New York local filing rules, move for attorney's fees pursuant to 42 U.S.C. § 1988.

It is so ordered.